UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN N. XEREAS, </br></br> Plaintiff, </br></br> v. </br></br> MARJORIE A. HEISS, *et al.*, </br></br> Defendants | ) </br> ) </br> ) </br> ) </br> ) Case No. 12-456 </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO
EXCLUDE THE EXPERT REPORTS AND TESTIMONY
OF PLAINTIFF'S EXPERTS CINDY VU AND JIM MORRISSEY**

Defendants Penn Social, LLC, Marjorie Heiss and Geoffrey Dawson moved to exclude the expert reports and expert testimony of Plaintiff's experts Cindy Vu and Jim Morrissey as violative of Fed.R.Evid. 702 and the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In opposition, Plaintiff makes no argument that Ms. Vu's expert opinions play any part in the "damages" calculated by her expert report. Instead, they claim that her testimony on what the law is related to corporate recordkeeping is relevant to any cause of action in any way related to a business record of the Company. It is the Court's role to inform the jury on the governing law, not an expert witness. Ms. Vu does not identify one corporate record, missing or not, that she contends contributed to Plaintiff's damages, and thus her testimony fails to meet the standards for admission of expert testimony.

1

Similarly, Mr. Morrissey's expert opinions are speculative and irrelevant and nothing offered by Plaintiff in opposition to Defendants' motion challenges that assertion. Mr. Morrissey essentially makes two claims on expenses. First, he could not find paper back-up for cost and expense entries in the LLC's QuickBooks accounting system.[1] Second, that based on this lack of located records, Morrissey assumes that Defendants misappropriated that money from the LLC and Plaintiff suffered damages as a result. It is completely speculative and based on no factual support to make claim number two based on claim number one, and for this reason the opinion should not be presented to the jury. Mr. Morrissey's valuation of the company is admittedly irrelevant to Plaintiff's damages, but Plaintiff alleges it offers "context." Mr. Morrissey admits it was calculated and written for settlement purposes. Morrissey Dep. at 26. It should not be admitted for the fact finders consideration. Finally, Mr. Morrissey's trademark infringement damage theory has never been accepted in D.C. courts and they can point to no case allowing it. The expert report and opinions of Vu and Morrissey fail to meet the standards required of Rule 702 and fail to meet the requirements set forth in *Daubert* and for those reasons the reports and testimony should be excluded from the record.

**ARGUMENT**

Plaintiff proffers two experts whose opinions offer nothing of relevance to the trier of fact, are based on incomplete data and whose methodologies are on their face incomplete, misleading and logically suspect. Neither expert's opinion meets the requirements of Rule 702 or Daubert and for this reason should be excluded from consideration by the trier of fact. The incomplete analysis and questionable methodology justify excluding the evidence as the Court exercises its important gatekeeper function required by Daubert. The Court "cannot "toss the

---

[1] Neither Ms. Vu nor Mr. Morrissey offer any opinions on the state of the LLC's QuickBooks accounting records, other than to note one or two errors among the over 7,000 entries.

[sic] 'the decision to receive expert testimony ... off to the jury under a let it all in philosophy.' " *Paige Int'l Inc. v. XL Spec. Ins. Co.*, 2016 WL 3024008 (D.D.C. 2016) (citing *Boyar v. Korean Air Lines Co., Ltd.,* 954 F. Supp. 4, 7 (D.D.C. 1996) (quoting *Joy v. Bell Helicopter Textron Inc.,* 999 F.2d 549, 569 (D.C. Cir. 1993)); *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 143 (4th Cir. 1994) (recognizing that "court may not abdicate its responsibility to ensure that only properly admitted evidence is considered by the jury")).

    1.    **Cindy Vu's Expert Opinions Fail To Meet the Requirements of Fed.R. Evid. 702**

Cindy Vu, proffered as an expert to quantify Plaintiff's alleged damages, played no part in calculating such damages. Plaintiff does not deny that Ms. Vu's opinion were not relied upon in calculating Plaintiff's alleged damages. Instead, Plaintiff argues that Ms. Vu's statements regarding IRS requirement and 1099 forms are relevant background to many of his causes of action. But these statements do not hold up under even the lightest of reviews. An action for an accounting only requires the Defendants to give Plaintiff access to their records. Whether those records are generally disorganized or certain records are missing does not give rise to damages in an accounting action. Fraud and RICO claims cannot be built on disorganized records, but require an active effort to deceive or other criminal activity, and Ms. Vu's opinions are irrelevant to any such claims. Nor are "disorganized records" a basis for piercing the corporate veil. The case relied on by Plaintiff, *IMark Marketing Services, LLC v. GeoPlast S.p.A.*, 753 F.Supp.2d 141 (D.D.C. 2010), stands for no such rule. In that case, a plaintiff was trying to label the Italian parent company as an alter ego of the U.S. company for jurisdictional purposes. One of the factors in determining if the companies were really separate was a review of maintaining corporate distinctions between the two. The organization of the records of the company was irrelevant.

Cindy Vu's expert report and testimony do not "help the trier of fact to understand the evidence or to determine a fact in issue" as required by Fed.R.Evid. 702. An expert is not needed to tell the trier of fact the law, that is the function of the Court. Ms. Vu's "background" opinions on IRS rules and requirements invade the exclusive domain of the Court. Moreover, the LLC's accounting records are maintained in its QuickBooks account, overseen by an accountant and used by an outside CPA for taxes and other filings. Ms. Vu offers little analysis of the QuickBooks records beyond noting some minor errors in classification, but instead focuses her examination to the retention of back-up materials already captured in the accounting software. Her opinions are based on her review of the paper records on-site, but she conducted no interviews with staff responsible for maintaining the records, and she conducted no official audit of the LLC's books.[2] Ms. Vu's opinions about the company's records based on a two and a half day review of the document stored on site at Penn Social are of no relevance to the causes of action actually pled by Plaintiff. For these reasons, Ms. Vu's report and expert opinion should not be admitted.

    **2.**     **Jim Morrissey's Opinion Are Irrelevant, Not Generally Accepted and Are Not the Product of Reliable Principles or Methods.**

        **A.**     **Mr. Morrissey's Testimony Regarding Expenses and Vendor's Bills is Speculative and Unsupported**.

As noted in Defendants' motion to exclude, Mr. Morrissey built his damage calculation by the following method -- for any entry on the LLC's QuickBooks general ledger that he could not locate a corresponding invoice, or any expense reimbursement that did not on its face reveal the connection to Penn Social, he assumed the charge was improper and it became an element of Mr. Xereas's damages. O'Neil Ex. Dec. at Ex.1; Ex. 5 (Morrissey Dep. at 33-35). This

---

[2] Defendants acknowledged that the LLC's book were unaudited, which is not a requirement of the LLC's operating agreement or DC law.

conclusion presumes that any unsupported expense was money improperly taken from the LLC by Defendants. But there is absolutely no evidence to support that claim. The party alleging a theft should have the burden of presenting evidence that the accused actually took the money, not simply that the invoices do not reflect on their face a connection to the Defendants. The Adams-Burch invoices prove the weakness in Mr. Morrissey's methodology. Mr. Morrissey did not find the actual invoices from Adams Burch in the LLC's paper files, so he assumed $153,000 was stolen from the company.[3] But Adams-Burch employee Alisa Issacs testified that in fact each entry in the LLC QuickBooks records were invoiced to Penn Social by Adams Burch and all were paid by Penn Social. His assumption that the money reflects damages lacks any support because the vendor whose invoices he questioned confirmed their validity.[4]

Plaintiff's response does not address the points made by Defendants regarding the Bayne and Dawson expenses. The expenses listed for Mr. Bayne were non-sensical and many dated from before the LLC was created, as admitted by Mr. Morrissey but never corrected. Mr. Dawson was never asked in either of his two depositions in this matter about the expenses for his trip to Maine, but now Plaintiff calls his declaration testimony self-serving.[5] Plaintiff's response also does not address the explanations given for ATM account withdrawals. A minimal effort by Plaintiff to understand the records he was reviewing would have easily revealed the legitimate

---

[3] It's possible that during the relevant time period Adams-Burch could have submitted invoices electronically, explaining why no paper record exists.

[4] The suggestion that the evidence submitted by Adams Burch is improper finds no support in Rule 26. Plaintiff's Second Amended Complaint makes no mention of Adams Burch so Defendants would have no basis to conclude that any employee of that company would have relevant information. In any event, that witness is serving to impeach Plaintiff's expert and therefore would not need to be disclosed under Rule 26.

[5] The only case cited by Plaintiff to justify ignoring Defendant's testimony submitted in declarations dates from 1927 and no longer represents valid commentary on procedures for Summary Judgment motions, as it was written long before the current modes of discovery were adopted in Federal Court.

nature of those expenses, and Plaintiff's refusal to address the submitted evidence is consistent with his strategy in this case of obfuscation and innuendo rather than actual truth seeking.

> **B.      Mr. Morrissey's Valuation of Plaintiff's 26.67% Share of the LLC is Not an Element of His Damages and Should be Excluded from the Record**

The second portion of Mr. Morrissey's expert report and testimony presents a business valuation of the LLC, and as Mr. Morrissey himself notes, the numbers were created for settlement purposes and are not part of Mr. Xereas' damage calculation, since Mr. Xereas' still owns the shares. O'Neil Ex. Dec. at Ex. 5 (Morrissey Dep. at 26).

Plaintiff now claims the numbers are relevant for context and makes reference to Ms. Heiss' sale of shares to Mr. Dawson. Unless Plaintiff is seeking to assert a derivative claim on behalf of Ms. Heiss, that sale is of no relevance to Plaintiff's claims. His asserted right of first refusal on those shares find no support in the Operating Agreement or any other documentation in this case, and the only support cited are the unsubstantiated allegations in the Complaint.

He also claims the figures are relevant to prove his risk in keeping his investment with Defendants. What this actually proves, however, is that the LLC was losing money while Plaintiff was involved and now the hard work of the Defendants has made his investment increase by 400% to 800%. The presentation of the LLC's net worth does not relate to any fact in controversy and should not be admitted.

> **C.      Mr. Morrissey's License Fee Model Is Not An Accepted Method for Computing Damages for Trademark Infringement and Is Too Hypothetical To Be Credited**

A plaintiff establishing a claim of trademark infringement may be entitled, under the Lanham Act, to damages in the form of either the infringer's profits if the infringement was willful or in bad faith, or Plaintiff's actual damages. *Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636 (D.C. Cir. 1982). Plaintiff does not even try to counter Defendants' arguments, instead arguing

that other courts have allowed a variation of licensing damages.  But that is not the law in D.C. Lacking any proof of "actual loss" or Defendants' profits, Mr. Morrissey's opinions regarding the value of the trademark for licensing purposes are irrelevant.

## CONCLUSION

For the reasons stated above, the Plaintiff's expert report and expert opinions are violative of Fed.R.Evid. 702 and the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and as such should be excluded from the record and not considered by the trier of fact.

Respectfully submitted,

\_/s/_____
William T. O'Neil
Bar No. 426107
THE O'NEIL GROUP LLC
1629 K Street, N.W.
Washington, DC 20006
Telephone (202) 684-7140
Facsimile ((202) 517-9179
woneil@oneilgroupllc.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of June 2018, I have caused the foregoing Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Exclude Plaintiff's Expert Report and Expert Opinions be served by operation of the Court's CM/ECF system upon the following:

> W. Todd Miller, Esq.
> Baker & Miller PLLC
> 2401 Pennsylvania Ave, NW
> Suite 300
> Washington, D.C. 20037
> Attorney for John Xereas
>
> Tony C. Richa, Esq.
> Richa Law Group, P.C.
> 4800 Hampden Lane
> Suite 200
> Bethesda, MD 20814
> Attorney for John Xereas

/s/_____
William T. O'Neil