IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN N. XEREAS, individually, on behalf of himself, and derivatively, as a Member and Shareholder in Penn Social, LLC, on behalf of Penn Social, LLC f/k/a Riot Act DC, LLC <br><br> **Plaintiff,** <br> v. <br><br> MARJORIE A. HEISS, GEOFFREY O.S. DAWSON, and PENN SOCIAL, LLC f/k/a Riot Act DC, LLC, <br><br> **Defendants.** | Civil Action No. 1:12-cv-00456-DAR |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE

In their Motions in Limine, ECF [159], Defendants seek to exclude four categories of evidence. First, Defendants move to exclude the expert report and opinions of Plaintiff's expert team, Cindy Vu and James Morrissey of Vu Forensics, claiming that their offered expert testimony is irrelevant and prejudicial. Defs.' Mot. in Limine, at 5-6. The Court has already stated that it would address Plaintiff's Daubert motion at the pre-trial conference, *see* August 9, 2018 Minute Order, but Defendants have chosen to ignore the Court and, instead, make another attempt at their failing argument. Indeed, Defendants' argument that the expert testimony is irrelevant is nearly farcical; the relevance of the experts' opinions and evidentiary findings on the Defendants' inadequate record keeping, the value of Plaintiff's share of the LLC, and the calculation of a reasonably royalty rate for the use of Plaintiff's trademark go to the core of Plaintiff's claims and damage calculations. Further, the experts offer a well-recognized means of calculating damages, and the probative value of this calculation outweighs any risk of undue prejudice.

Second, Defendants move to exclude evidence regarding the romantic, physical relationship between Defendants Dawson and Heiss. *Id.* at 6. Defendants have already sought relief from the Court on this matter twice – once in their Motion to Strike Statements in Plaintiff's Second Amended Complaint [ECF 103] and again in their Motion for a Protective Order [ECF 105] – and have twice been denied. This Court has been quite clear in its determinations, and it is borderline sanctionable that Defendants continue to push the issue. The affair between Defendants Dawson and Heiss – which was unknown to Plaintiff before he entered into a business relationship with the couple – is "necessary and relevant" to Plaintiff's claims of fraud and conspiracy to commit fraud, breach of the covenant/duty of good faith and fair dealing, and breach of fiduciary duty, among other claims. *Whitney Nat'l Bank v. Boylston*, No. 09-cv-0059, 2009 U.S. Dist. LEXIS 53446, *14 (W.D. La. June 24, 2009) (holding that, while "potentially embarrassing," allegations of sexual relationship between defendant and third party were not scandalous and were "necessary and relevant to [plaintiff's] allegations of fraud and conspiracy to commit fraud").

Third, on a related note, Defendants seek to exclude evidence regarding the zoning requirements of the Riot Act space, including the "arts overlay." Defs.' Mot. in Limine, at 7. As with Defendants' affair, this evidence goes to the heart of Plaintiff's fraud counts. In addition, the zoning issues relate directly to Plaintiff's claims of unjust enrichment, breach of the duty/covenant of good faith and fair dealing, and trademark infringement, among other claims.

Fourth and finally, Defendants seek to exclude evidence of multiple lawsuits involving Defendant Dawson. *Id.* at 6. Defendants argue that evidence of other lawsuits is irrelevant and inadmissible under Fed. R. Ev. 404(b). *Id.* Yet, Defendants wish to present evidence of an earlier lawsuit involving Plaintiff that is completely unrelated to the actions at hand. The

hypocrisy is palpable.  To the extent that the Court finds that Defendant Dawson's previous lawsuit are irrelevant and should be withheld from evidence, so too must Plaintiff's single dispute be deemed irrelevant and therefore withheld.

## ARGUMENT

**I.     Plaintiff's Expert Report and Testimony Are Relevant to Plaintiff's Claims and Must Not Be Excluded.**

As in their Motion to Exclude [ECF 141], Defendants' Motions in Limine argue that Plaintiff's expert team must be excluded on two grounds.  First, Defendants argue that the opinions of Cindy Vu, the first half of Plaintiff's expert team, are irrelevant because they are not the basis for Plaintiff's damages calculations.  Defs.' Mot. in Limine, at 5.  This is incorrect.  As explained in Plaintiff's Opposition to Defendants' Motion to Exclude, Ms. Vu's testimony regarding Defendants' failures to issue 1099s, maintain legally required records, or implement a proper accounting system, as well as the presence of various accounting irregularities and errors, are all highly relevant to Plaintiff's claims and damages.  These claims include Plaintiff's demand for an accounting, as well as his claims of conversion, breach of contract, fraud, RICO, and breach of fiduciary duty claims.  *See* Pl.'s 2d. Amen. Compl. [ECF 102] ("SAC"), ¶¶ 186, 194, 196, 375-81.  Further, the allegations regarding Defendants' failure to maintain adequate books and records is highly relevant to Plaintiff's request that the court hold Defendants Heiss and Dawson personally liable for their misconduct in managing the LLC.  *See I Mark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 150 (D.D.C. 2010) (explaining that the "failure to maintain corporate minutes or adequate records" is a factor in deciding whether to pierce the corporate veil).  The testimony is also helpful to a jury when determining what inferences should be drawn from missing records, both for liability and for damages.  Generally, where a defendant has failed to adequately maintain books and records, doubts raised by the

records are resolved against the defendant. *See Woolard v. Woolard*, 547 F.3d 755, 761 (7th Cir. 2008) (if a trustee fails to maintain adequate records "all presumptions will be against the trustee upon a settlement; obscurities and doubts being resolved adversely to him"); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983) (doubts in damages calculation caused by incomplete records kept by infringer must be resolved against infringer); *see also Shapiro, Bernstein & Co. v. Remington Records, Inc.*, 265 F.2d 263, 272 (2d Cir. 1959) (trial court should have allowed expert testimony that was "hypothetical and to a degree speculative and uncertain" because uncertainty was caused by defendants' failure to maintain adequate records). A jury is therefore likely to be assisted by the standards for accounting and recordkeeping and the manners in which Defendants have failed to meet those standards.

Second, Defendants argue that the opinions of James Morrissey, the second half of Plaintiff's expert team, are irrelevant and misleading. Defs.' Mot. in Limine, at 5-6. Again, Defendants are incorrect. Mr. Morrissey's testimony is directly related to Plaintiff's conversion, breach of contract, fraud, RICO, and breach of fiduciary duty claims, as well as Plaintiff's trademark claims. SAC ¶¶ 186, 194, 196. Indeed, it appears that Defendants' main complaint is with respect to Mr. Morrissey's trademark damages calculation, which they argue is an unaccepted means of calculation. Defs.' Mot. in Limine, at 5. However, an opinion regarding a hypothetical negotiation is a common methodology for arriving at a reasonable royalty in trademark cases. *See, e.g., ITT Corp. v. Xylem Grp., LLC*, 963 F. Supp. 2d 1309, 1331-33 (N.D. Ga. 2013) (denying motion to exclude opinions on a hypothetical reasonable royalty for trademarks because criticisms of opinions went to weight, and not admissibility, of the evidence); *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 2010 U.S. Dist. LEXIS 30719, at *31 (D. Md. Mar. 30, 2010) (refusing to exclude hypothetical reasonable royalty opinion in trademark

case because claims that it was too speculative "may be adequately addressed through cross-examination and the presentation of contrary evidence").

For the foregoing reasons, and the reasons further outlined in Plaintiff's Opposition to Defendants' Motion to Exclude [ECF 145], the expert team's report and testimony must not be excluded.

**II.     As this Court Has Already Determined, the Personal Relationship Between Defendants Dawson and Heiss Is Relevant to Plaintiff's Claims.**

Defendants have twice moved to keep out the evidence of the admitted personal relationship between Defendants Dawson and Heiss, and, twice, the Court has found that the evidence is relevant.  Moreover, contrary to Defendants' arguments, this evidence does not invite the jury to base its decision on emotion or other improper motives, but, rather, presents compelling evidence of the special relationship between Dawson and Heiss that motivated the couple to conspire to illegally remove Plaintiff Xereas from his position and unfairly exclude him from the profits and revenues of Riot Act/Penn Social.  *See* Pl.'s Opp. to Defs.' Mot. to Strike Statements in Pl.'s SAC [ECF 58-1] at 5; *see also Sanchez v. Bumann*, 2015 U.S. Dist. LEXIS 46272, at *15-16 (D. V.I. Apr. 9, 2015) (finding allegations of extramarital affair were relevant to issue of Defendant's motive)*; see also, e.g., Mishra v. Tandon*, 12-cv-50390, 2013 U.S. Dist. LEXIS 32552, at *10 (N.D. Ill. Mar. 8, 2013) (denying motion to strike mentions of affair as scandalous because they were related to showing defendant's motive for interfering with plaintiff's business relations).  As such, the affair directly relates to Plaintiff's claims of, *inter alia*, fraud and conspiracy to commit fraud, breach of the covenant/duty of good faith and fair dealing, and breach of fiduciary duty.

### III. Evidence Regarding the Zoning of Riot Act Comedy Theater Is Both Relevant and Is Admissible.

Defendants seek to "exclude from the record evidence and testimony regarding the zoning of Riot Act Comedy Theater and Penn Social, including reference to the 'arts overlay'" because, they argue, it "is misleading and irrelevant." However, as with the personal relationship between Defendants Dawson and Heiss, the issue of Riot Act/Penn Social's zoning relates directly to motive and forms the foundation of several of Plaintiff's claims. As explained in the Second Amended Complaint:

> Defendant Dawson had been interested in the [Riot Act/Penn Social] space for over two years because of significant rent abatement, tax credits, and other incentives that the space offered due to the specialized zoning restriction ("Preferred Use Zoning") and prime location. The establishments Dawson had experience running did not meet the zoning criteria, and he did not have a business plan that would meet the Preferred Use Zoning requirements or possess the knowledge of how to run an arts/theater venue. Defendant Xereas had that requisite business plan and knowledge to run an arts/theater venue, but lacked the capital that would be required to lease a 13,000-square-foot commercial space. Accordingly, the real estate agent introduced Plaintiff to Defendant Dawson….Because of Plaintiff's involvement in the business, Defendants gained the expertise necessary to operate a performing arts venue, as required under the Preferred Use Zoning. Accordingly, the Defendants were able to become tenants in a 13,000 square foot Preferred Use Zoning commercial space and derived financial benefits from this classification.

SAC ¶ 31, 47.

Irrespective of whether or not Riot Act/Penn Social can actually legally exist in an arts space in its current incarnation (*i.e.,* a nightclub), it was Defendant Dawson's belief that he needed Plaintiff Xereas to get access to a high-traffic space at a cost savings. Then, once Dawson was in the space, with a co-conspirator with whom he had an extramarital affair, he began his machinations to push out Plaintiff. Accordingly, Defendants' motion should be denied.

**IV.    To the Extent That the Court Finds Evidence of Plaintiff's Prior, Unrelated Lawsuit Is Relevant and Admissible, So Too Is Evidence of Defendant Dawson's Prior Lawsuits and His Other Businesses.**

Among his motions in limine, Plaintiff moved this Court to preclude the Defendants from introducing evidence or testifying regarding a ten-year-old litigation and settlement agreement involving Plaintiff and non-parties. The litigation and settlement are unrelated to this case and irrelevant to the instant litigation. Indeed, the lawsuit and settlement were concluded well before the Plaintiff had met the Defendants or their partnership was contemplated. Further, the introduction of this evidence would be prejudicial to Plaintiff and constitute impermissible character evidence. As such, the Federal Rules of Evidence bar the admission of evidence of the litigation and settlement.

In complying with their obligations under Local Rule 7(m), Plaintiff's counsel consulted with Defendants' counsel to determine whether they could narrow the issues. *See* Ex. A, Decl. of Amber L. McDonald. However, Plaintiff's counsel was advised that Defendants would not consent to preclude testimony or evidence on the topic of Plaintiff's lawsuit or settlement. *See id*.

Thus, it is nothing short of hypocrisy that Defendants have filed their own motion to preclude the "information about other lawsuits that Mr. Dawson or Mr. Dawson's businesses have been involved with in the past." Defs.' Mot. in Limine, at 6. There is absolutely no justification for allowing Rule 404 character evidence for one party but excluding it for the another. Fed. R. Evid. 404(b). If evidence of Plaintiff's unrelated suit is relevant to this litigation, then so, too, must the multiple suits involving Defendant Dawson be relevant. Conversely, to the extent that the Court determines that evidence of Defendant Dawson's many business lawsuits are irrelevant and should be withheld, so should it find that the evidence of Plaintiff's single suit is inadmissible.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions in Limine.

Dated: August 29, 2018

Respectfully submitted,

/s/ W. Todd Miller
W. Todd Miller (D.C. Bar No. 414930)
Amber L. McDonald (D.C. Bar No. 974873)
tmiller@bakerandmiller.com
amcdonald@bakerandmiller.com
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Fax: 202-663-7849

Tony C. Richa
Richa@richalawgroup.com
Richa Law Group, LLC
One Bethesda Center
4800 Hampden Lane, Suite 200
Bethesda, MD 20814
Telephone: 301-424-0222

*Attorneys for Plaintiff/Counterclaim Defendant John N. Xereas*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby affirm and declare that on August 29, 2018, I caused a true and correct copy of the foregoing to be served on all Parties registered for this case via the Court's ECF system.

/s/ W. Todd Miller
W. Todd Miller