**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN N. XEREAS<br><br>Plaintiff,<br><br>v.<br><br>MARJORIE A. HEISS, *et al.*,<br><br>Defendants | ) | Case No. 12-456 |

**DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE**

Pursuant to the Amended Scheduling Order, Defendants Marjorie Heiss, Geoffrey Dawson and Penn Social LLC ("Defendants") file this consolidated opposition to Plaintiff's sixteen motions in limine, which seek to exclude from evidence relevant facts regarding the relationship between Plaintiff and Defendants, the breakdown of that relationship over time, the causes of that breakdown, and finally Defendants' actions in response to the breakdown. As a general matter, Plaintiff's objections find no basis in fact or law and should be rejected. The many pieces of evidence that Plaintiff seeks to restrict from the trier of fact may be harmful to his theory of the case, but they are not unfairly prejudicial or irrelevant, and thus fail to meet the standards for a motion in limine. Plaintiff's repetitive motions are addressed below in the order of filing.

**LEGAL STANDARD**

As noted in Defendants' motions in limine, "[m]otions in limine are designed to narrow the evidentiary issues at trial." *Flythe v. District of Columbia*, 4 F.Supp.3d 222 (2014) (citing

*Williams v. Johnson*, 747 F.Supp.2d 10, 14 (D.D.C.2010)). Importantly, motions in limine are not meant to decide issues of fact. "In light of their limited purpose, motions in limine "should not be used to resolve factual disputes," which remains the 'function of a motion for summary judgment, with its accompanying and crucial procedural safeguards.'" *Graves v. District of Columbia*, 850 F.Supp.2d 6 (D.D.C. 2011) (citing *C & E Servs., Inc. v. Ashland Inc.*, 539 F.Supp.2d 316, 323 (D.D.C.2008)). "Nor is a motion in limine a 'vehicle for a party to ask the Court to weigh the sufficiency of the evidence,'" *Graves*, 850 F.Supp. 2d, at 11 (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F.Supp.2d 508, 532 (D.N.J.2008)).

## ARGUMENT

### 1. Plaintiff's Letter Explaining the Closing of His Prior Business is Relevant. (ECF 160)

During the negotiation of the lease for the space that became Riot Act Comedy Theater, and later Penn Social, Plaintiff was asked by a representative of the landlord to explain why his prior comedy club, under the name Riot Act, closed. Defendants do not seek the admission of Plaintiff's own writing as an attempt to question his character nor to argue that his prior club "failed" and that such failure reflects poorly upon Plaintiff. In fact, nothing stated in the letter reflects poorly upon Plaintiff. Instead, the letter is offered as evidence of the difficulties Plaintiff faced in opening his own comedy club. When he opened a club on his own, it closed within 9 months. In seeking other opportunities, he teamed with other established businessmen in seeking a new location, and eventually teamed with Defendants Dawson and Heiss, also established club owners in Washington, D.C. In seeking the rental from Boston Properties, with whom Mr. Dawson and his companies had extensive business relationship, Plaintiff was the newcomer and was asked to explain his prior businesses. The fact that the rental agreement went through contradicts any claim by Plaintiff that the letter is prejudicial. The relationship between Plaintiff

and Defendants and how it changed over time is a central issue in both Plaintiff's claims and Defendants' counterclaims, and Defendants' Trial Exhibit 1 is just a small part in the record revealing the nature of the relationship. Plaintiff lacked the capital resources necessary to build his own club, and Defendants had both the capital and the experience to be trusted by a landlord for such a large undertaking. Further, Plaintiff has pled that Defendants tricked him into joining the LLC as a means of stealing his intellectual property and learning the details of the comedy business so they could force him out. Trial Ex. 1 suggests that there were very different motivations in play at the time the parties came together to start their business. As such, Trial Ex. 1 is relevant and is not prejudicial.

**2. Testimony Regarding Defendants' Efforts to Remove the Riot Act Name From the LLC's Liquor License is Both Relevant and Non-Prejudicial. (ECF 161)**

Plaintiff seeks to prevent Defendants from introducing documents or testimony about efforts to remove the "Riot Act" name from the Penn Social liquor license. This effort is misguided for several reasons. First, Defendants have no intention of introducing such records because as Plaintiff notes no such records were located. However, should Plaintiff argue that the Riot Act name on the liquor license is an "intentional" commercial use for purposes of his trademark and related claims, then the evidence of Penn Social's attempt to remove the name is relevant.[1] If Plaintiff suggests the use is intentional, then Defendants should be allowed to testify regarding their efforts and discussions with ABRA, just as Mr. Dawson was during the LLC's deposition. There was no failure of discovery, as Plaintiff and his team were invited in to Penn Social's offices and allowed access to all documents present. If non-privileged documents about

[1] As argued in Defendants' motions for summary judgment, the appearance of "Riot Act" on the Penn Social liquor license is not a "commercial use" of the name and cannot be the basis for a trademark infringement claim.

the ABRA request existed at Penn Social or in email accounts, they were available for review and not withheld from production.

**3. Exhibits 24, 25, 30, 49 and 50 Are Relevant Admissions Against Interest Relevant to Plaintiff's Efforts to Claim Exclusive Ownership of the Riot Act Trademark During the Period of Use by the LLC And/Or Contain Evidence of Plaintiff's Efforts to Hurt Penn Social LLC's Business Relationships And Damage the Company. (ECF 162)**

Defendants' Trial Exs. 24, 25, 30, 49 and 50 are business records (emails and email chains) generated by John Xereas and in certain circumstances his mother, Maria, including communications between Plaintiff and certain Defendants. The characterization of all of these exhibits as "Maria Xereas" records is inaccurate and misleading.[2] Despite the fact that Maria Xereas was never an employee of the LLC, Plaintiff gave her wide access to Company information and had her perform tasks for the Company in the Company's name. She even had her own email account. Those tasks include searches for trademark information at the origins of the company (Exs. 30 and 49) that are relevant to the question of what Plaintiff knew about the ownership of the trademarks. During this early formation period, Plaintiff repeatedly talked about the LLC's or "our" ownership of the trademarks and protecting "our" interests in the trademark. Whether these conversations were with his partners or included his mother, the relevance of the documents is the same and evidence a clear understanding that the trademarks were to be jointly held. Also, the documents make no mention of any licensing agreement, as no such agreement exists. To claim that these admissions are not relevant to a dispute over the ownership of the trademarks stretched credulity past the breaking point. Exhibit 24 is another email exchange among Plaintiff, his brother and his mother evidencing his efforts to upset Penn Social's certificate of occupancy under the zoning laws before the Advisory Neighborhood

[2] For example, Ms. Xereas is not even mentioned in Ex. 50.

Commission ("ANC"). This is directly relevant to the LLC's breach of contract and breach of fiduciary duty claims against Plaintiff and further evidence his lack of loyalty to the LLC in which he was a 26% shareholder. Finally, Ex. 25 is evidence of Plaintiff's efforts to combat the LLC's effort to force him to make his promised financial contribution to the firm in October of 2011. His failure to do so put the LLC in financial difficulties at a time it was losing money and forced his partners to draft a revised operating agreement reflecting his failure to invest in the Company. The documents detail Maria Xereas denigration of Plaintiff's partners and the origins of Plaintiff's theory that Defendants were trying to freeze him out of the Company. Undermining that theory is the fact that Plaintiff had not made his required investment and the fact that Defendants never had any plan to take his "Riot Act" intellectual property, property which they disavowed six months later. The identified exhibits are highly relevant and carry no unfair prejudice.

**4. Evidence that Plaintiff Pressured Other Comics Not to Perform Is Admissible. (ECF 163)**

Plaintiff seeks to exclude any evidence that he pressured comics not to perform, claiming that evidence of this fact was not disclosed during discovery. However, Defendants interrogatory answers clearly identify a conversation between Defendant Heiss and comic Judy Gold in which Gold states that Plaintiff had requested that she cancel her performance. In that case, Gold refused and performed at the club in any event. Such evidence is not hearsay, as it is either a present sense impression or a then existing mental or emotional condition shared by Gold with Defendants. The evidence should also be admissible not for the truth of the matter asserted, but as evidence that once Plaintiff abandoned his duties with the LLC, the LLC was encountering difficulties in getting comics to perform at the Club and thus further damaging their prospects for profitability. In addition, consistent with Defendants interrogatory disclosures,

witness Peter Bayne testified in opposition to Plaintiff's motion for summary judgment on the LLC's counterclaims that comics, including Todd Rexx and Wyatt Cenac refused to schedule performances at the show, citing Plaintiff's public claims about his lawsuit and disagreement with the other LLC members. This testimony is consistent with the LLC discovery responses regarding comics refusing to perform and is likewise admissible.

**5. Testimonial Evidence that Plaintiff Had Invoices Delivered to His House that Sat Unpaid for Months is Admissible. (ECF 164)**

Plaintiff seeks to exclude from evidence testimonial evidence that Plaintiff had certain LLC invoices delivered to his house but failed to forward those to company managers for payment, allowing a large payable to develop off the LLC's books. He claims that such evidence is prejudicial, but simply because the evidence tends to bring into question Plaintiff's management practices does not mean such evidence is subject to being excluded as unfairly prejudicial. From the first day it opened, Riot Act lost money, save for one month in 2011 when the presale of tickets at substantial discounts resulted in breaking even. The Club quickly fell back into the red. The true financial condition of the Club was worse than suspected because Plaintiff was sitting on a stack of unpaid bills that he failed to bring to anyone's attention. When discovered, the LLC's finances were even worse that originally suspected. But these facts, which reveal the chaos of Plaintiff's management style, are not inadmissible because of unfair prejudice. Such evidence is relevant to Plaintiff's breach of contract claims and Defendants' counterclaims. This is the exact type of "fair" prejudice that should be presented to the trier of fact and not weighed in response to a motion in limine. This evidence calls into question Plaintiff's claim that Defendants had no basis to act in restricting his responsibilities in January 2012. Further, there was no failure of discovery on this matter. To the extent the matter was discussed in email correspondence, such emails were not withheld. Defendants have not

identified any trial exhibits regarding the invoices, but that is not a basis to exclude the testimonial evidence. It is not at all surprising that there were no documents regarding the invoices, as when they were discovered, they were paid and the payments recorded in the LLC's account. Again, such records were produced. But it would not be expected that any other type of record would exist. That is not basis to exclude testimonial evidence of the facts.

**6. Trial Exhibits 26, 27, and 28 are Admissible Business Records. (ECF 165)**

Plaintiff seeks to bar in full transcripts of partner meetings that are at the heart of the current dispute. These transcripts clearly qualify as business records of the most elemental kind, the transcripts of meetings between and among the managing members of the business. The transcripts are made from recordings of the meetings, recordings that were produced to Plaintiff in this action. All can be authenticated by the Defendants themselves, present at each of the meetings. Plaintiff fails to show how these records could lack trustworthiness. Simply because he was not allowed to have a court reporter present at one of the meetings does not indicate that the recordings made and produced lack trustworthiness. The simple fact that some portions of the tape may be inaudible does not indicate a lack of trustworthiness, and Plaintiff cites no case law in support of such a position. Further, Plaintiff has failed to present any evidence of prejudice arising from the recorded meetings. Exs. 26, 27, and 28 are clearly admissible business records.

**7. Evidence Regarding the Quitclaim Deed and Domain Assignment Is Not Prejudicial or Misleading. (ECF 166)**

On June 25, 2012, Defendants provided to Plaintiff a document transferring whatever rights they had in the name "Riot Act" and related domains, including email accounts and the codes needed to transfer control of those domains and accounts back to Plaintiff. Plaintiff now seeks to bar this testimony from the jury, yet it was exactly what Plaintiff requested when he sent

Defendants a cease and desist letter earlier that same year. The quitclaim process makes no claims to what rights Defendants had in the trademark, but simply makes clear to Plaintiff and any third parties that Defendants no longer possessed any rights in the material at all. In other words, whatever rights Defendants had, even if they were no rights, from that day forward third parties would know that Defendants were not claiming any such further right. It is quite the stretch to claim that by renouncing any right in a property, Defendants are subliminally telling the jurors that they had complete rights in the property prior to that date. Moreover, that claim finds no support in the law. The quitclaim deed is not prejudicial to Plaintiff as it settles completely the question of who has rights in the property subsequent to the date, but makes no claim with respect to ownership prior to the date of the deed. Plaintiff's motion should be denied.

**8. Evidence of the Social Media Sabotage is Admissible. (ECF 167)**

Plaintiff seeks to bar from the record evidence of the social media sabotage but fails to present the necessary evidence to bring such evidence into question. Defendants intend to show that within 24 hours of the LLC's termination of his brother's employment, Plaintiff's good friend Dawn Henderson admittedly attacked the LLC's social media accounts, deleting records, changing passwords and generally taking over control or deleting of the LLC's accounts. The timing of the attacks alone is enough to suggest collusion between Plaintiff and Ms. Henderson, though both deny it.[3] But the simple denials do not suffice to settle the issue. Defendants contend that both Plaintiff and Ms. Henderson were not truthful in their testimony that they did not act together, and ultimately that factual question on their truthfulness should be answered by the jury. Immediately upon the sabotage occurring, Plaintiff knew it was the action of Ms.

[3] In other circumstances, temporal proximity can support an inference of causation. See, e.g. *Hamilton v. Geithner*, 666 F.3d 1344 (D.C. Cir. 2012) (in Title VII discrimination context).

Henderson and so stated to his business partners. When they begged him to get her to stop, he did nothing, again suggesting that he and Ms. Henderson were working together. During this time, when the LLC could not access its twitter account, Plaintiff would post messages on the LLC's twitter account, suggesting again that he was acting in accordance with Ms. Henderson. All of this circumstantial evidence suggests that Plaintiff was involved in the social media sabotage and not simply a passive observer. But even if he was simply a passive observer, his actions violated his contractual and good faith duties to his partners and the LLC of which he owns a substantial share. Evidence of the social media sabotage is admissible despite the self-serving testimony of Plaintiff.

**9. Emails From and To Shaun Robinson Are Admissible. (ECF 168)**

Plaintiff seeks to keep from the jury conversations between Plaintiff and the LLC's chosen IT vendor Shaun Robinson. Mr. Robinson's prior company Squiid, Inc. was originally a party to this suit, but was dismissed by the Court prior to the start of discovery. Plaintiff's main complaint is that the documents may not have been produced by Mr. Robinson pursuant to a prior subpoena. First, Plaintiff cannot definitively state that the documents were not produced. In addition, Plaintiff has no evidence that he pursued Squiid for further compliance with the subpoena. What is clear is that Defendants had nothing to do with the Squiid subpoena response. Mr. Robinson provided Defendants with copies of the emails in response to a discussion regarding the involvement of John Xereas in the transfer of email account from Mr. Xereas to Riot Act LLC. Defendants produced over 475 documents to or from Mr. Robinson. To the extent the documents are partially illegible, that was the way they were produced to Defendants. Clearly the emails are relevant to Plaintiff's claims that the email accounts and domain names were improperly taken by Riot Act from him, since the testimony and contemporaneous emails

establish that Mr. Xereas was a willing participant in the entire process. Given their relevance, the exhibits should not be excluded from the record.

**10. Testimony About the LLC's Funds Cannot be Limited To Only Line Items Supported by Documents. (ECF 169)**

Acting in conformity with his baseless experts' reports claiming that financial transactions recorded in the LLC books but that lack a located paper back up did not really happen, Plaintiff seeks to bar testimony regarding LLC "funds" unless those line items can be traced to a paper back-up document. For many of the same reasons Defendants have moved to strike related expert opinions on this subject, the motion in limine is baseless. All of the financial records of the LLC are contained in the business' electronic accounting records. In a modern world, it is not surprising that many of these records are not based on paper records at all. But it stretches the Plaintiff's theory beyond the breaking point to suggest that there can be no testimony of the LLC's funds without documentation beyond the already existing accounting records. The data is no less reliable because it is stored electronically rather than on paper, and the modern world would grind to a halt if Plaintiff's theory were applied across the board. As Defendants have argued throughout this case, all of the LLC's records on site were made available to Plaintiff, and many of the "missing" paper records were simply overlooked by Plaintiff who often did not know what he was looking for. This case did not start out as an expense reimbursement case. Plaintiff has simply adopted that claim as his other theories of recovery have crumbled. Instead of challenging any of the expenses on their substance, the entire case rides on whether Plaintiff's experts found and matched the correct documents during a three day search of the LLC's records. Under Plaintiff's broad exclusionary effort, no discussion of whether the company was in good financial condition or not could be presented to the jury if one expense form was accidentally discarded, because by their nature expenses build

upon each other and get incorporated into the whole. The lack of seriousness inherent in Plaintiff's theory is revealed by their continued reference to the "Maine headquarters," a joke someone entered into an expense that Mr. Dawson incurred when he was force to fly back to Washington during summer vacation because of this litigation. Similar references to a European vacation are wholly unsupported. The uncontested facts are that Mr. Dawson lent the LLC $800,000 of his own money to keep it afloat, secured by his personal residence, while Plaintiff did nothing but figuratively throw rocks through the front windows. A party alleging fraud must show more than general baseless allegations, and the efforts to prevent any testimony on the LLC's financial condition finds no basis in law or fact.

**11. Evidence Regarding the Timing of Mr. Xereas' Capital Contributions is Admissible. (ECF 170)**

Plaintiff seeks to exclude from evidence testimony and documentation regarding his late capital contributions to the LLC. Each of the three original managing members invested $100,000 into the LLC for start-up funding, with an additional $2 million raised from outside investors, all brought in by Mr. Dawson. The timing of the Plaintiff's investment is a relevant fact that played a part in the financial pressures the LLC was udder in the fall of 2011. It is also relevant that instead of investing $100,000 of his own money, Mr. Dawson arranged a loan to Plaintiff from a Dawson friend for his final $50,000 contribution. Despite this lack of putting his own skin in the game, Plaintiff attempted to run the Club like the sole owner, firing hand-picked managers approved by the LLC and causing significant tension with the other managing members. The fact that the Club lost money from day one and Mr. Xereas' contribution of funds was delayed played a role in the eventual blow up between the parties in January 2012. Testimony about these facts is not unfairly prejudicial to Mr. Xereas. Instead, they are the basis for explaining to the jury the process by which the membership fell apart. Plaintiff argues that

Defendants are trying to introduce "other wrongs" to prove action in conformity here. His "wrongs" are not unrelated to the claims at issue here and are thus not acts "other than those at issue." Similarly, the facts do not unfairly mislead or confuse the jury – his investment in this company is what is at issue. Evidence relating to Mr. Xereas' capital contributions explain many of the tensions within the company and are admissible for that purpose.

**12. Testimony Regarding Plaintiff's Filming of Comics is Admissible. (ECF 171)**

Plaintiff seeks to keep out evidence regarding his unauthorized filming of comics and publication of those films on the LLC's website. Plaintiff on several occasions failed to obtain the required permission from comics prior to filming and posting clips online, resulting in requests by comics to take such clips down. To the extent documents regarding this issue exist, they would have been produced in the form of emails. No films were produced because Plaintiff and his co-conspirator destroyed such evidence when they deleted the LLC's YouTube channel. Further, Plaintiff did not ask any questions of Mr. Dawson and Ms. Heiss when they had the chance to question them under oath on this topic. Testimony regarding this topic is admissible, as the same undisclosed actions taken by Mr. Xereas at his previous employer resulted in his loss of employment and significant liability on the part of his employer. Such testimony is neither unfairly prejudicial nor misleading, and there is no basis to bar the jury from considering it.

**13. Inconsistent Testimony is a Grounds for Impeachment, Not A Motion in Limine. (ECF 172)**

Plaintiff seeks to bar Mr. Dawson, who will testify of his personal knowledge at trial, from contradicting the 30(b)(6) testimony he provided in this case. Mr. Dawson is clearly the most knowledgeable person at Penn Social regarding the facts underlying this lawsuit, but simply because the corporate deponent cannot answer a few questions on irrelevant topics cannot be used to limit his potential testimony pursuant to a motion in limine. In the event Mr. Dawson

gives contradictory testimony at trial on a topic covered in the designee deposition, then that fact can be pointed out to the jury. Plaintiff fails to identify any topic on which Mr. Dawson had a complete lack of knowledge. Simply counting the "I can't recalls" during a deposition is a futile exercise for all parties. But it is simply unworkable to bar "contradictory" testimony in a motion in limine.

**14. Testimony Regarding the 2008 Legal Case and Settlement are Admissible. (ECF 173)**

Plaintiff seeks to exclude testimony regarding a lawsuit brought against him in 2008 and the subsequent settlement. Defendants seek to admit such evidence for limited purposes, such as to testify that the lawsuit was never disclosed to Defendants prior to the formation of the LLC, that his action at Riot Act repeated some of the same errors that exposed his employer to a lawsuit, and that his testimony in this case was contradicted by the settlement agreement regarding his share or ownership of his prior employer. Defendants make no effort to re-try the case from 2008, and its use as evidence will be limited to these discrete topics. For those purposes, the evidence is both relevant and non-prejudicial, and as such admissible.

**15. Plaintiff Never Sought Additional Information Regarding Documents it Now Claims Are Inadequately Identified. (ECF 174)**

Plaintiff identifies 6 exhibits which it claims were inadequately identified. Copies of the six exhibits are attached as Exhibit 1 (Exs. 39, 40, 41, 44, 45, and 46). At the time of identification, Bates labeled copies of certain document had not been located, as many documents in this case were produced without Bates labels. As fulsome a description of the documents as possible was provided, and had a copy been requested they would have been provided. But no such request was made. These documents, several from Plaintiff himself, were

well known during the course of the litigation and should not be inadmissible simply because Plaintiff never requested the copies.

**16. Witnesses Not Listed on the Defendants Rule 26 Disclosure are Not Objectionable. (ECF 175)**

Plaintiff objects that two of Defendants' potential trial witnesses were not listed on Defendants Rule 26 disclosure. One worked as an accountant for the LLC and the other is an investor, and as such were known to Plaintiff. Under Local Rule 16.5 regarding pre-trial orders,

> No objection shall be entertained to a witness or to testimony on the ground that the witness or testimony was disclosed for the first time in a party's Pretrial Statement, unless the party objecting has unsuccessfully sought to learn the identity of the witness or the substance of the testimony by discovery, and the Court or magistrate judge finds the information to have been wrongfully withheld.

Plaintiff never made any effort during discovery to learn of these witnesses and no information regarding these witnesses was wrongfully withheld. In fact, as noted above, both witnesses were known to Plaintiff. Plaintiff has no grounds to object to the listing of these potential witnesses on the witness list.

**CONCLUSION**

For these reasons stated herein, Plaintiff's motions in limine should be denied.

_/s/______________________
William T. O'Neil
Bar No. 426107
THE O'NEIL GROUP LLC
1629 K Street, N.W.
Washington, DC 20006
Telephone (202) 684-7140
Facsimile ((202) 517-9179
woneil@oneilgroupllc.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Defendants Opposition to Plaintiff's Motions in Limine was served on August 29, 2018, by ecf and email to counsel of record noted below:

W. Todd Miller, Esq.
Baker & Miller PLLC
2401 Pennsylvania Ave, NW
Suite 300
Washington, D.C. 20037
Attorney for John Xereas

Tony C. Richa, Esq.
Richa Law Group, P.C.
4800 Hampden Lane
Suite 200
Bethesda, MD 20814
Attorney for John Xereas

_/s/____________________
William T. O'Neil