UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
JOHN N. XEREAS                                  )
                                                )
    Plaintiff,                                 )
                                                )   Case No. 12-456
v.                                              )
                                                )
MARJORIE A. HEISS, *et al.*,                    )
                                                )
    Defendants                                 )
_____ _____)


# DEFENDANTS' REVISED PROPOSED PRETRIAL ORDER

**1.**     **Defendants' Statement of the Case**

    This case arises from a business dispute among the three original managing members of a DC LLC, formed as Riot Club DC, LLC, and later renamed Penn Social, LLC. The three managing members were Plaintiff John Xereas, and Defendants Geoffrey Dawson and Marjorie Heiss. Each of the three managing members contributed their experience and expertise to creating and operating the venue, as well as a personal investment of $100,000 each. The LLC operated a comedy club called Riot Act Comedy Theater in Penn Quarter, DC, that opened in August 2011.

    Mr. Dawson, an experience bar operator in DC, raised $2 million from investors he knew and had worked with on prior projects. Mr. Dawson also oversaw the design and build-out of the venue, a $2 million construction project. The contractors and other vendors who performed the work were hired by Mr. Dawson, who had used many of the same contractors and vendors in prior projects. Mr. Dawson was not directly compensated by the LLC for this work, instead it represented his contribution in exchange for his 26% ownership of the venture.

    Ms. Heiss, a licensed attorney in DC, contributed her legal expertise in creating the LLC

under DC law and drafting the mutually agreed upon operating agreement which set forth the terms under which the LLC would operate, distribute funds, repay investors and other terms agreed upon by the managing members. Ms. Heiss also played an instrumental role in drafting and filing the papers to obtain necessary licensing and permits with the DC government. Ms. Heiss was not directly compensated by the LLC for this work, instead it represented her contribution in exchange for her 26% ownership of the venture.

Mr. Xereas had prior experience booking comics and managing a comedy venue. He booked talent for the club, scheduled shows and handled details from fees, travel arrangements and other associated tasks with booking talent and managing the comedy portion of the business. He suggested the use of and contributed the name "Riot Act" to the venture as he had previously u8sed the name in his comedy booking business and in a small club that he operated for seven or eight months in 2008. The managing members never verbally negotiated a licensing fee for the use of the name "Riot Act." The signed operating agreement did not provide for any licensing fee for the use of the Riot Act name. Mr. Xereas was not directly compensated by the LLC for his work, instead it represented his contribution in exchange for his 26% ownership of the venture. Per Mr. Xereas request, after the club opened, he was paid a monthly salary by the LLC for his role in the operation of the club, but this was stopped per the agreement of a majority of the managing members when the club failed to generate sufficient profits to allow the payment of this salary.

Several events in the fall of 2011 led to tensions among the managing members. By early September 2011, Mr. Xereas had not paid his $100,000 cash investment to the LLC, and the LLC was having cash shortfalls due to an operating deficit. The other managing members approached Mr. Xereas suggesting that they would need to agree to a revised operating Agreement if he was

unable or unwilling to pay his $100,000 contribution. Mr. Xereas paid a first installment of $50,000 with money loaned to Mr. Xereas by the arrangements of Mr. Dawson through his friend Thomas DiTonto. Mr. Xereas later paid the remaining $50,000 of his $100,000 commitment to the LLC, and discussions regarding changes to the Operating Agreement ended.

Also in the fall of 2011, Mr. Xereas fired the club general manager, Matt Morinello, hired by the LLC to oversee the non-comedy operations of the club, where most of the profits of the venture were expected. Mr. Xereas took this action unilaterally without the approval of a majority of the managing members. For the first time Mr. Xereas threatened to leave the venture if his firing of Mr. Morinello was reversed, even though the firing exposed the LLC to liability which was eventually settled at the expense of the LLC.

The club was unprofitable from the start, and by January 2012 when the majority of the managing members decided to make changes to the club (as they were authorized to do by the LLC's operating agreement), the Plaintiff abandoned his work for the LLC and took steps, with others, to damage the company. At first Mr. Xereas would occasionally return phone calls regarding club operations, but soon stopped responding at all. The Facebook, Twitter and YouTube marketing efforts of the LLC were deleted or taken over by Plaintiff or those working with Plaintiff. He had his lawyers issue a cease and desist letter which jeopardized the operations of the club, and Plaintiff and his friends, working together, made false and unfounded accusations ranging from intellectual property claims, legal ethics challenges, even criminal complaints, among others. The LLC had to scramble to handle Plaintiff's job responsibilities and attempt to keep the club operating. After several months of failing to fulfill his duties to the LLC and taking actions to damage the LLC, including filing a lawsuit against the LLC, the majority of the managing members voted to remove Mr. Xereas from his role as a managing

member, pursuant to the terms of the agreed Operating Agreement.

By mid 2012, the LLC revised operations at the club with a significant investment by Defendant Dawson and gave up whatever rights it had in Plaintiff's claimed intellectual property, which Plaintiff has never used since that date. The rebranding of the club costs over $700,000. The club became Penn Social, and by 2013 was operating with a profit. Plaintiff continued his efforts to hurt the LLC, challenging various interests of the LLC. Had these challenges been successful they would have closed the club, despite the fact that Plaintiff continues to own 26% of the LLC. To date, the LLC has spent over $800,000 indemnifying its managing members for the required defense of baseless claims by Plaintiff. The actions of Defendants have protected Plaintiff's investment in the LLC and even increased its value.

**2.  Defendants' Statement of Claims**

Defendants have the following claims against John Xereas, as stated in Defendants' Counterclaims:

1. Breach of Contract

2. Breach of the Implied Duty of Good Faith and Fair Dealing

3. Tortious Interference with Existing Business and Contractual Relationships

4. Tortious Interference with Contractual Relationships with Facebook

5. Tortious Interference with Contractual Relationships with Twitter

6. Tortious Interference with Contractual Relationships with YouTube

7. Tortious Interference with Prospective Business Relationships

8. Conspiracy to Tortiously Interfere with Existing Contractual Relationships

9. Conspiracy to Tortiously Interfere with Prospective Contractual Relationships

10. Breach of Fiduciary Duty

11. Violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030, et seq.)

12. Conspiracy to Violate the Computer Fraud and Abuse Act (18 U.S.C. §1030, et seq.)

13. Conversion

**3.    Statement of Defenses**

Defendants asserted to following affirmative defenses.

1. Plaintiff fails to state a claim for which relief can be granted.

2. Plaintiff's claims are barred in whole or in part by unclean hands.

3. Plaintiff's claims are barred in whole or in part by a failure to mitigate his damages, if such damage exists.

4. Plaintiff's claims are barred in whole or in part by the statute of frauds.

5. Defendants have not infringed any applicable trademarks under federal or state law.

6. Plaintiff's trademark claims are barred in whole or in part by fraud on the United States Patent & Trademark Office.

7. Plaintiff's trademark claims are barred by legal abandonment of any marks at issue.

**4.    Schedule of Witnesses to Be Called**

    **A.    Expected to Call**

    **1.**   Geoff Dawson (all topics, 3-4 hours)

    **2.**   Marjorie Heiss (all topics, 2 hours)

    **3.**   John Xereas (all topics, 3-4 hours)

    **B.    May Call**

    **1.**   Peter Bayne (club operations, rebranding, 2 hours)

    **2.**    Shaun Robinson (email and websites, 1 hours)

    **3.**    Geoff McNabola (build out, expenses, 1 hour)

    **4.**    Matthew Morinello (club management and dismissal, 1 hour)

    **5.**    Dawn Henderson (employment and sabotage, 2 hours)

    **6.**    Evan Rosenthal (expenses, club operations, 1 hour)

    **7.**    Lauren Zoltnick (YouTube and recordings, 1 hour)

    **8.**    John Sullivan (club operations, 1 hour)

    **9.**    Peter Genis (accounting, 1 hour)

    **10.**    Ted Xereas (club operations, 1 hour)

    **11.**    Tom DiTonto (loan to Plaintiff, 1 hour)

**5.**    **List of Exhibits to be Offered**

See Trial Exhibit list, included in attached Exhibit 1.

**6.**    **Designation of Deposition to be Offered**

See Deposition Designations, included in attached Exhibit 1.

**7.**    **Itemization of Damages**

To date, the LLC has indemnified over $800,000 in expenses incurred by the Managing Members in defending against Plaintiff's efforts to damage the LLC.

The LLC incurred at least $50,000 in expenses from January to July because Plaintiff abandoned his job duties.

The LLC spent at least $700,000 rebranding to Penn Social after comedy operations became untenable due to Plaintiff's actions.

**8.**    **Other Relief**

Not applicable.

    Respectfully submitted,

   /s/_____
William T. O'Neil
Bar No. 426107
THE O'NEIL GROUP LLC
1629 K Street, N.W.
Washington, DC 20006
Telephone (202) 684-7140
Facsimile ((202) 517-9179
woneil@oneilgroupllc.com

Case 1:12-cv-00456-DAR   Document 190   Filed 10/15/18   Page 8 of 8

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Defendants Proposed Pre-Trial Order was served on October 15. 2018, by ecf and email on counsel of record noted below:

> W. Todd Miller, Esq.
> Baker & Miller PLLC
> 2401 Pennsylvania Ave, NW
> Suite 300
> Washington, D.C. 20037
> Attorney for John Xereas
>
> Tony C. Richa, Esq.
> Richa Law Group, P.C.
> 4800 Hampden Lane
> Suite 200
> Bethesda, MD 20814
> Attorney for John Xereas

                                                                                                                    /s/_____
                                                                                                                   William T. O'Neil