# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN N. XEREAS,<br><br>Plaintiff/ Counterclaim Defendant,<br><br>v.<br><br>MARJORIE A. HEISS,<br>GEOFFREY O.S. DAWSON, and<br>PENN SOCIAL, LLC f/k/a Riot Act DC, LLC,<br><br>Defendants / Counterclaim Plaintiffs. | Civil Action No. 1:12-cv-00456-DAR |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION
*IN LIMINE* TO EXCLUDE EXPERT REPORTS AND TESTIMONY
AND EVIDENCE OF DEFENDANTS' PERSONAL RELATIONSHIP**

Defendants' Motion *in Limine* to Exclude Expert Reports and Testimony ("Defendants' Supplemental Motion *in Limine*") rehashes the same arguments to exclude the expert reports and evidence regarding the sexual relationship between Defendants Dawson and Heiss that have already been made in Defendants' Motion to Strike Statements in Plaintiff's Second Amended Complaint [ECF 103], Defendants' Opposition to Plaintiff's Motion to Compel and Defendants' Motion for a Protective Order [ECF 105], Defendants' Motion to Reconsider the Granting of Plaintiff's Motion to Compel [ECF 94], Defendants' Motion *in Limine* [ECF 159], as well as Defendants' Motion to Exclude Plaintiffs' Expert Reports [ECF 141]. Plaintiff responded to each of these filings, and – in particular – responded to motions on these topics in relation to the claims of breach of contract, breach of good faith and fair duty, trademark infringement, and

1

unjust enrichment. *See* Pl.'s Response to Defs.' Daubert Mot. [ECF 145], at 5-10; Pl.'s Response to Defs.' Motion *in Limine* [ECF 176], at 3-5. Nothing in the Court's summary judgment decisions has demanded this unnecessary motions practice. However, Defendants continue to clog the docket with these issues, repackaging the same recycled arguments over and over again. As such, Plaintiff must once again address Defendants' arguments and as they relate specifically to the remaining claims.[1]

## STATEMENT OF LAW

As Defendants' noted in their brief, "the purpose of motions *in limine* is to 'narrow the evidentiary issues at trial.'" Defs.' Br. at 5 (quoting *Williams v. Johnson*, 747 F.Supp. 2d 10, 14 (D.D.C. 2010)). Plaintiffs do not dispute Defendants' citation of the statement of law to the extent that the Rules of Evidence set up a balancing test between probative value and prejudice in determining the admissibility of evidence. *See* Defs.' Br. at 3-4 (citing Fed. R. Evid. 401 & 403, *Daniels v. District of Columbia*, 15 F.Supp.3d 62, 67). However, as the Court Appeals for the District of Columbia Circuit has noted, "Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to the jury." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (noting that "[a]lthough there may have been some risk that a recitation of the facts of the incident would evoke emotions in the courtroom, that risk was comparatively small, and it alone

---

[1] In addition, Defendants' Motion *in Limine* to Exclude Expert Reports and Testimony ("Defendants' Supplemental Motion *in Limine*") is well beyond the Court's deadline for such motions. *See* Dec. 22, 2017 Amen. Scheduling Order [ECF 135] (setting deadline for motions *in limine* as Aug. 15, 2018). Moreover, Defendants do not even seek leave to file their untimely motion. As such, Defendants' Supplemental Motion *in Limine* should be stricken. *See Klayman v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264, 270 (D.D.C. 2010) ("[T]he timeliness requirement is '[c]rucial to the integrity of the judicial process'…. Even the briefest review of the docket in this case confirms that [the motion] is far from timely. For this reason alone, the motion must fail." (quoting *SEC v. Loving Spirit Found.*, 392 F.3d 486, 492 (2004))).

did not render the testimony 'unfair' or 'substantially outweigh[]' its probative value."); *see also, Carter v. Hewitt*, 617 F.2d 961, 972 (3d. Cir. 1980) (noting Rule 403 "does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case.") *Id.* at 972; *see also United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2001) (discussing the probative value of campaign contributions in a government official bribery where such contributions, though legal, "gave jurors a window into the way in which lobbyist [] gain influence" noting that "without such evidence, a jury might wonder why an official would sacrifice his integrity for a few Wizards tickets" and further noting that "[p]erhaps more significantly, the contribution testimony amounted to a strong *modus operandi* evidence").

## ARGUMENT

**I. Plaintiffs' Expert Report and Testimony Will Help the Trier of Fact to Understand the Evidence or Determine Facts in Issue as to Damages Regarding the Breach of Contract and Breach of Good Faith and Fair Dealing Claims.**

Defendants' Supplemental Motion *in Limine* misunderstands the role of the expert reports and testimony. On page 4 of Defendants' untimely motion, Defendant argue to exclude the expert report and testimony because "[t]he outlined 'damage' to the company, and by extension to Plaintiff, from the lack of back-up recording does not arise from Defendants' actions in removing Plaintiff as a Managing Member, even if that action breached the Operating Agreement." However, the Amended Operating Agreement – the source of the parties' contract – plainly requires that the Managing Members "keep full and accurate books of account of the Company." *See* [ECF 67-2], Amen. and Restated Op. Agreement of Riot Act DC, LLC, at 24. Defendants' failure is a breach of that contract.

As the Court noted in its opinion, '[a] claim for breach of contract requires: '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of

that duty; and (4) damages caused by breach." *Xereas v. Heiss*, DE 188 ("*Xereas II*") (quoting *Xereas*, 933 F.Supp.2d at 8) ("*Xereas I*"). Damages in this context stands to mean injury or harm – *i.e.,* that Plaintiff has been denied the "benefit of his bargain." "Under District of Columbia law, the standard measure of actual damages arising from a breach of contract is the non-breaching party's expectation interest – that is, an amount sufficient to give the non-breaching party the benefit of the bargain." *CapitalKeys, LLC v. Democratic Republic of Congo*, 278 F. Supp. 3d 265, 272-73 (D.D.C. 2017). The question is then, how to quantify those injuries. As stated in Restatements (Second) of Contracts, expectation damages are "measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (f) any cost or other loss that he has avoided by not having to perform." *Id.* "While an award may not be based on speculation or guesswork, it may be a just and reasonable estimate based on relevant data. Probable and inferential considerations as well as direct and positive proof may provide the basis for an award." *NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890, 902 (D.C. 2008). "[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.") *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 379, 47 S. Ct. 400, 71 L. Ed. 684 (1927).

      Plaintiff's expert report and testimony does and will help the jury in providing evidence and explanation behind the numbers used to quantify Plaintiff's "benefit of the bargain" denied to him by Defendants' breach of the Amended Operating Agreement. Further, Ms. Vu's report and testimony set the foundation for the appropriate documentation to establish the LLC's profits

and costs, and notably, what information is inappropriately missing.  Her testimony provides guidance to the jury as to what kind of inferences are to be drawn from Defendants' records which are at the foundation of the damages calculations.  Mr. Morrisey's testimony and report provide additional information relating to the accuracy of Defendants' profits and loss numbers, as well as the value of the LLC and the trademark.  As an example, if Defendants argue that the LLC lacked profits and therefore Plaintiff is entitled to no "lost profits" (as they do in their reply brief relating to their *Daubert* motion) or that the value of the company is less and therefore Plaintiff is owed less for his trademark, Ms. Vu's and Mr. Morrisey's testimony on missing records and valuation give the jury the foundation to what credibility and quantity to assign to Defendants' argument.  Their opinions provide the jury with the information to make a "just and reasonable" determination of damages and avoid "speculation and guesswork."  The expert reports and testimony are therefore relevant to the remaining claims.

Additionally, Defendants have asserted counterclaims against Plaintiff for his alleged breach of the Amended Operating Agreement.  Defendants have not offered any expert testimony to support their claims for or quantify any damages nor have they identified any admissible evidence to present as damages.  However, Plaintiff must assume Defendants will argue some amount is attributable to Plaintiffs' alleged actions, and it is possible and likely that Defendants will blame various failures of the business, such as loss of profits, on Plaintiff.  Thus, Plaintiffs' expert reports and testimony, which provide context for missing amounts, accuracy of profits and losses, and the devaluation of the business may be used to defend against any failures Defendants attempt to attribute to Plaintiff.

## II.  Plaintiffs' Expert Report and Testimony Will Help the Trier of Fact to Understand the Evidence or Determine Facts in Issue as to the Trademark Infringement Claims.

It is unclear from Defendants' brief if Defendants seek to exclude Mr. Morrisey's testimony, or a portion thereof, relating to trademark infringement on Defendants' arguments that "evidence of damages arising from certain expense reimbursements and LLC expenditures that were said to be unsupported by back-up documentation" as "those outlined damages do not arise from any breach of a licensing agreement" or "are not a measure of damages arising from the use of Plaintiff's trademark." *See* Defs.' Br. at 4-5.

With regard to Mr. Morrisey's report and testimony regarding his license fee model, Plaintiff has addressed this in his Opposition to Defendants' Daubert Motion. In short, Plaintiffs' model is based on actual loss, not Defendants' profits. As the case cited by Defendants' in their reply to their Daubert Motion notes, "[u]nder section 35 of the Lanham Act, a plaintiff <u>can</u> recover the defendant's profits and his own damages." *Foxtrap, Inc., v. Foxtrap, Inc.*, 671 F.2d 636, 641 (D.D.C. 1982) (emphasis added). The court notes "each measure depends on different factors, that if making an award based on defendant's profits, then a showing of bad faith is required. *Id.* Thus, actual loss and defendants' profits are two different measures of damages, only one of which is subject a showing of bad faith.

Additionally, Plaintiffs' respectively request the Court deny Defendants' attempts to preemptively block Plaintiff from using expert opinion to defend his claims and himself against Defendants' counterclaims. As mentioned above, it is unknown how Defendants plan to assert damages to their counterclaims, and to the extent they rely on their sales and profits, expert testimony may be necessary to give the jury proper understanding of their full value.

### III.     Evidence Relating to Defendants' Affair Is Relevant to Plaintiffs' Breach of Contract and Breach of Duty of Good Faith and Fair Dealing

This is perhaps Defendants' fifth time attempting to exclude evidence relating to the admitted sexual relationship between Defendants Dawson and Heiss.  Defendants' only argument now is that Plaintiffs previously noted that such evidence was relevant to his conspiracy and fraud claims which have now been dismissed.  *See* Defs.' Br. at 5 (citing Pl.'s Opp. to Defs.' Mot. *in Limine* [ECF 176], at 5.  The sentence on which Defendants rely explicitly states that the relationship has a bearing on the claim of breach of duty of good faith and fair dealing.  In order to take Defendants at their word that Plaintiff only intended to use the relationship on conspiracy and fraud, one would have to stop reading mid-sentence.  The sentence is, in full: "As such, the affair directly relates to Plaintiff's claims of, *inter alia*, fraud and conspiracy to commit fraud, **breach of the covenant/duty of good faith and fair dealing** and breach of fiduciary duty."  *See* Pl.'s Opp. to Defs.' Mot. *in Limine* at 5.  (emphasis added).

Moreover, the relationship has already been demonstrated to be relevant to the breach of the duty of good faith and fair dealing.  Most recently, the Court cited this evidence among others as basis for denying Defendants' Summary Judgment.  *See Xereas II* at 16 (citing Pl.'s Opp. to Defs.' Mot. for Summ. Judg. at 18.

Defendants now call this evidence "spurious" but go no further, offering no citations or other evidence, even if inappropriate for a motion *in limine*, to counter the findings of this Court, case law, or Plaintiff's arguments.  *See* Defs' Mot. at 5.  The fact that something may be embarrassing is not cause alone to exclude it.  Both sides have filed lawsuits against the other regarding the circumstances for Plaintiff's termination as a Managing Member.  Plaintiff has put forth evidence that Defendants Dawson and Heiss suffered from a multitude of conflicts, including a secret affair.  As Plaintiff explained in his Response to Defendants' Motion in

7

Limine, the affair between Dawson and Heiss is relevant to establishing a motivation, reason, cause, or factor for Defendants' termination of Plaintiff, in violation of the Amended Operating Agreement, in bad faith, and contrary to their duty of good faith and fair dealing. *See id*. Defendants dispute this and argued that Plaintiff was aware of the conflicts and that his actions were cause for his termination. *See* Defs.' Mot. for Summ. Judg. at 1, 12-15. Both sides have put at issue the circumstances of Plaintiff's termination, including the motivation, cause, or reason therefore. All of these factors, including the affair, must go before the jury for them to hear and weigh. *See, e.g., U.S. v. Ring,* 706 F.3d (allowing evidence relating to campaign contribution and testimony regarding the defendants' "distasteful" commentary about the contributions despite its potential prejudicial value, where such prejudice did not substantially outweigh the probative value of providing the jury background and possible "*modus operandi*.").

## IV. Conclusion

Defendant's instant motion is an attempt to re-bite an apple that has already been eaten. All of Defendants' arguments were addressed in Plaintiffs' Opposition to Defendants' Motion *in Limine* and Plaintiffs' Opposition to Defendants' Daubert Motion. In each, Plaintiffs established the relevancy of the evidence to the claims that currently remain: breach of contract claims, breach of the duty of good faith and fair dealing, unjust enrichment, and/or trademark claims. The fact that Plaintiffs also established their relevancy to claims that were dismissed does not diminish the relevancy for those claims that remain.

Even putting aside the fact that these arguments have been addressed in full, Plaintiffs herein again establish the relevancy of the evidence to the remaining claims. The expert reports and testimony provide assist the trier of fact, the jury, in determining the appropriate damages and the existence of the personal relationship assists the jury in determining whether and how

Defendants may have engaged in bad faith in terminating Plaintiff under the terms of the Amended Operating Agreement.

For the foregoing reasons, Defendants' Supplemental Motion *In Limine* should be denied.

Dated: October 26, 2018

Respectfully Submitted,

/s/ W. Todd Miller
W. Todd Miller (D.C. Bar No. 414930)
Amber L. McDonald (D.C. Bar No. 974873)
Erin Glavich (admitted *pro hac vice*)
tmiller@bakerandmiller.com
amcdonald@bakerandmiller.com
eglavich@bakerandmiller.com
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20037
Telephone:  202.663.7820
Fax:  202.663.7849

Tony C. Richa (admitted *pro hac vice*)
richa@richalawgroup.com
RICHA LAW GROUP, P.C.
One Bethesda Center
4800 Hampden Lane, Suite 200
Bethesda, MD 20814
Telephone: 301.424.0222
Fax: 301.576.8600

*Attorneys for Plaintiff/Counter-Defendant*
*John N. Xereas*

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby affirm and declare that on October 26, 2018, I caused a true and correct copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION IN LIMINE TO EXCLUDE EXPERT REPORTS AND TESTIMONY AND EVIDENCE OF DEFENDANTS' PERSONAL RELATIONSHIP to be served on all counsel of record by ECF.

                                                      /s/ Amber L. McDonald
                                                       Amber L. McDonald