## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN N. XEREAS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| MARJORIE A. HEISS, | ) | **Civil Action No. 1:12-cv-00456-DAR** |
| GEOFFREY O.S. DAWSON, and | ) | |
| PENN SOCIAL, LLC f/k/a Riot Act | ) | |
| DC, LLC, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### PLAINTIFF'S SECOND AMENDED PRETRIAL STATEMENT

Pursuant to the Court's November 1, 2018 Minute Order, Plaintiff John N. Xereas files this Second Amended Pretrial Statement.

## I.   STATEMENT OF THE CASE

### A.   Nature of the Case

While Defendants have characterized this case as a mere "business divorce," it is more accurately described as a "business betrayal."  Plaintiff John Xereas ("Plaintiff") has been involved in the comedy industry for 20 years and is the owner of the RIOT ACT Trademark in conjunction with comedy.  In 2010, when he was introduced to restauranteur Defendant Geoffrey Dawson ("Dawson"), the two verbally agreed to an equal partnership wherein they would launch a new comedy club/theater under the RIOT ACT Trademark.  However, Defendant Dawson wanted total control over business and, to that end, introduced Plaintiff to Marjorie Heiss ("Heiss"), a corporate and tax attorney who was the longstanding in-house counsel for Dawson's Bedrock Management Company, as well as a partner in multiple businesses with Dawson.  .

With the intention of achieving total control over the enterprise, Dawson suggested that

Heiss join the partnership and, although Plaintiff was hesitant and vocal about his concerns about Heiss and this arrangement, Defendant Dawson was insistent.  Plaintiff ultimately acquiesced, with the condition that he remain the sole, exclusive owner of the RIOT ACT trademark and domain names, the mark he had conceived of as a trademark for use in connection with his comedy business, as well as his own comedy club, as far back as the late 1990s.

      With this condition agreed upon, the three became equal partners.  Dawson and Heiss thus secured a two-thirds voting majority of the partnership, enabling Dawson to secure control of the enterprise and laying the foundation by which he would eventually force Plaintiff out of the business.  Together, the three launched a new comedy club together at 801 E. Street N.W.

      On May 6, 2010, each party became a Managing Member of Riot Act DC, LLC, pursuant to an operating agreement drafted by Heiss. This operating agreement was amended on November 1, 2010. At no time did Defendant Heiss advise Plaintiff to seek independent counsel due to conflicts of interest that arose from her representation of Dawson-owned businesses, her business partnerships with Dawson, or the fact that she was legal counsel for Riot Act DC, LLC, while also being a principal of that same entity.

      The three developed a business plan and offering memorandum that was used by the LLC to secure approximately $2 million in investment funds.  The operating agreements, business plan and offering memorandum detail how the LLC would use the RIOT ACT Trademark to generate revenue, but none of these documents provided for the reassignment or transfer of Plaintiff's ownership of the RIOT ACT trademarks and domain names.  No separate document was executed transferring ownership of the RIOT ACT Trademark.   From the beginning, the parties agreed that the RIOT ACT trademarks and domain names were to be continually owned, solely and exclusively, by Plaintiff who relied on his ownership interest and role as General

Manager to ensure quality control and proper use of the trademarks.  This was important because Plaintiff devoted significant resources and worked diligently to establish the reputation of the RIOT ACT trademark as a source of high-quality entertainment services and a symbol of civic responsibility.  Prior to launching the business with the Defendants, Plaintiff had used the site to announce shows with nationally renowned comedians, such as Paul Mooney, Dick Gregory, Jeff Ross and Bob Saget, at major venues and booked many private functions and corporate events.

The three partners further agreed that the LLC would temporarily license the use of the RIOT ACT Trademark from Plaintiff and, once the business became profitable, Plaintiff would be paid a licensing fee for the use of his RIOT trademarks and associated domain names. Plaintiff made numerous verbal and written requests that this licensing agreement be memorialized in writing, but such an agreement was never presented to Plaintiff or entered into.

In January 2011, the new partnership, operating as Riot Act DC, LLC, hired Squiid, Inc., a website design company to improve upon the website at Plaintiff's Internet domain "riotactcomedy.com" that he had launched in September 2005.

In connection with the new website project, Plaintiff provided Squiid with the domain registration, password, and other information to seven of the more than 60 RIOT ACT domain names that he owned.  At this time, Plaintiff reminded the Defendants of their agreement that the trademark and domain names were to be retained solely by Plaintiff and no changes to domain name records should be made.  As they had on multiple occasions, Defendants Dawson and Heiss assured Plaintiff that he would continue to retain full ownership of the trademarks and domain names and, further, that he should pursue federal registration for the trademark.  Thus, in August 2011, Plaintiff authorized his own then-attorney to order trademark searches in anticipation of registration, and, in January 2012, Plaintiff applied to become the sole registered

3

owner of the Riot Act trademark.  In September 2012, Plaintiff's application was approved, and he became the sole registered owner of the RIOT ACT Trademark with a date of first use of September 2005.

Unbeknownst to Plaintiff, before the new business had even opened its doors to the public, Defendants Dawson and Heiss were using LLC funds for non-LLC purposes and making expenditures without maintaining financial records (*e.g.*, receipts and invoices) as required by federal law, District of Columbia law, IRS Regulations, the LLC Operating Agreement, and internal policies and procedures.  LLC funds were used to benefit Dawson's other businesses and for other non-business related, personal purposes.  This misappropriation of funds continued throughout the operation of the LLC, thereby unjustly enriching Defendants at Plaintiff's expense.

In addition to dictating the partnership's use of the RIOT ACT trademark, the Business Plan memorialized the partners' agreement that Plaintiff would act as the new theater's General Manager with responsibility for the day-to-day operations of the comedy theatre.  Legal and accounting oversight and the entire buildout of the theatre space would rest with Heiss and Dawson.  For Xereas's role, the parties agreed Plaintiff would be compensated $72,000 per year, and he would begin receiving his salary in January 2011.  Making a sacrifice that he believed was in the best interest of the LLC, Plaintiff later agreed to defer his salary until such time as the LLC was in a better financial position to start paying him, at which time he would be paid for past unpaid time.  Despite the parties' agreement, Plaintiff ultimately only received approximately $26,000 for two years of hard work and dedication.

On August 11, 2011, the LLC eventually opened to positive reviews from press and patrons.  However, despite good ticket sales, Plaintiff's tireless work and his acquisition of top-

level national acts for the venue, Defendants Dawson and Heiss were already conspiring to force Plaintiff out of the business.  Indeed, less than two months after opening the theater, Defendants Dawson and Heiss presented Plaintiff with a draft Second Amended Operating Agreement.  This draft, which had been prepared without Plaintiff's knowledge, proposed to significantly reduce Plaintiff's ownership interest in the LLC.  It would also degrade his investment status from a Class A Managing Member to a Class B investor with no management responsibilities or rights, remove his voting rights, and allow for his removal as General Manager without compensation for his work to date.  Despite the threats made by Defendants Dawson and Heiss, Plaintiff refused to sign this agreement.

Defendants Dawson and Heiss engaged in behaviors that were detrimental to the business.  Defendant Heiss regularly behaved inappropriately, touching both staff and comics in a sexual manner.  Defendant Heiss often spoke in a sexually explicit, crude and vulgar manner to comedians and staff, touched employees inappropriately, would boast about her aptitude for oral sex, and would expose her breasts to others.  Due to similarly inappropriate behavior, at least one employee filed an EEOC claim, which included sexual harassment charges against Defendant Heiss.  Plaintiff repeatedly expressed concerns about the behavior of Defendant Heiss to Defendant Dawson.  Refusing to act in the best interests of the LLC, Defendant Dawson declined to remove her from the partnership.  Defendant Heiss revealed to Plaintiff that she had information she could use against Defendant Dawson, including other business improprieties.  Accordingly, Defendant Heiss remained with the LLC.

As time passed, Defendants Dawson and Heiss aggressively increased their machinations to force Plaintiff out of the business.  The Defendants continued to create a hostile work environment, refused to include Plaintiff in company decisions, refused to provide Plaintiff with

5

a financial accounting or access to financial records and placed undue stress on him and other employees.  Although January 2012 was on pace to be the business's most successful month yet, on January 17, 2012, Dawson and Heiss terminated Plaintiff's brother, Ted Xereas, who had been an event planner for the theater and employed by Riot Act since 2005, and Plaintiff's friend Mike Farfel, who had assisted in the day-to-day operations of the theater.  Both were important to the success of the business.  These two individuals were eventually replaced with friends of the Defendants who had no experience in running a comedy theater.

On January 26, 2012, a date known to Defendants as Plaintiff's birthday, Defendants Dawson and Heiss held another managers' meeting without notice.  During the meeting, they told Plaintiff that, as the majority of the Managing Members, they were removing him from any management role or authority for the operation of the theater and/or the LLC.  This action was made without cause, in violation of the Operating Agreement.  Later, in an effort to belatedly legitimize their actions and create grounds for his removal, Defendant Heiss offered to pay former employee Dawn Henderson money to implicate Plaintiff in various wrongdoings; Ms. Henderson, however, refused.

On March 22, 2012, Defendants removed Plaintiff as a Managing Member of the LLC, at which time they falsely alleged that he had refused to return to the theater and perform his business duties after the January 17, 2012 firings of his brother and friend.  Of course, Defendants had actual knowledge to the contrary, as they had cornered Plaintiff at the theater four days after the firings to have an unscheduled "meeting" wherein Plaintiff's managerial powers were usurped.  On January 21, 2012, Defendants Dawson and Heiss arranged for the locks and security system codes at the theater to be changed in order to prevent Plaintiff from gaining access to the theater or its business records.  At some point thereafter, the Defendants

also authorized the unlawful transfer of the Domain Name Registration for "riotactcomedy.com" to the LLC and prohibited Plaintiff's access to his longstanding business and personal email account at johnx@riotactcomedy.com.  In 2005, Plaintiff had established e-mail addresses for himself, his brother Ted and his mother Maria, as RIOT ACT was a "family business." Each of the e-mail accounts were used for both business and personal purposes, and the accounts contained private and confidential information, including medical information and correspondence with legal counsel.

Once they had wrested control of the johnx@riotactcomedy.com email account, Defendants, directly and through their agents, began intercepting emails intended for Plaintiff, alternately ignoring messages or impersonating Plaintiff.  As a pretext, the Defendants continued to use the email account to give the appearance of attempts to contact Plaintiff.  For example, on June 19, 2012, Defendant Dawson sent a succession plan to the LLC shareholders; Plaintiff's copy was provided to johnx@riotactcomedy.com.  Yet, a year later, Plaintiff's email account still in Defendants' control, Defendants' counsel wrote to the undersigned advising that Defendants' counsel would "begin" reviewing the emails stored in the "johnx@riotactcomedy.com" email account.  Defendants also instructed employees of the theater to advise people calling for Plaintiff that he was "in a meeting."  Defendants' seizure of the RIOT ACT Domain Names and associated e-mail addresses, as well as their directive to employees to mislead those trying to reach Plaintiff, caused harm to the Plaintiff.  Those who were told that Plaintiff was no longer managing the theater were falsely informed that he had been terminated due to incompetence, dishonest business practices, deceptive sales practices, and other false claims. This all resulted in Plaintiff being denied access to booking records and to his customer and contact lists.   Further, Plaintiff was unable to ensure quality control and the proper use of his RIOT ACT Trademarks

and RIOT ACT Domain Names when Defendants took his intellectual property.

Defendants continue to improperly and illegally use Plaintiff's RIOT ACT Trademark to this very day, thereby depriving Plaintiff of the ability to fully use or license the Trademark to others and resulting in economic damages.  Further, Defendants' actions have devalued the value of the RIOT ACT Trademark and diminished the goodwill associated therewith.  Having stolen Plaintiff's life work, and, effectively, his identity, Defendants Dawson and Heiss proceeded to do irreparable harm to the business by mismanaging relationships, losing engagements, and costing the LLC business.  The pair sought to change preexisting contracts and deals made by Plaintiff, manipulating agreements to the point that they were so one-sided that relationships were ruined and business was lost.

In June 2012, Defendants closed the comedy theater to remodel, after just 10 months of operations.  The business reopened on July 14, 2012, as Penn Social, a sports bar, restaurant, and gaming establishment.  Defendants removed most of the seating for comedy shows and added more bars, a dance floor, and game machines.  The new operation included promotions such as pub crawls, drinking game tournaments, and dance parties that encouraged excessive drinking and resulted in fights, noise complaints, disturbances, and incidences that required police involvement and resulted in numerous complaints from the neighbors.

The changes to the business operations also put the LLC in violation of its Certificate of Occupancy.  Without a valid Certificate of Occupancy, Defendants are in violation of Section 404.1 of the Alcoholic Beverage Regulation Administration ("ABRA") guidelines and are at risk of losing their liquor license.  Defendants have also made misrepresentations to ABRA about the nature of the renovations to the theater.  The ABRA guidelines require that all "substantial changes" be reported to ABRA.  Despite Defendants making changes that are considered

"substantial changes" to their business operations, Defendant Heiss signed off on documentation stating that there was no "substantial change" to the business after "substantial changes" were, in fact, made.

On June 5, 2012, Defendants' attorney sent to Plaintiff's former counsel an e-mail stating that the Defendants "have decided to stop using the mark Riot Act."  Defendants' counsel further wrote on June 21, 2012 that "[t]he Company also intends to stop using all domain names that incorporate the phrase RIOT ACT…."  However, Defendants admittedly continue to maintain various documents and licenses, including their liquor license which is prominently displayed on the premises of Penn Social, in the name of RIOT ACT DC, LLC to this very day.

On January 13, 2013, Defendants amended the business name in the Articles of Organization, but did not file an amendment to change the purpose of the LLC.  As such, the purpose of the LLC remains "to run a comedy theater, bar, restaurant and all activities incidental or relating to."  In addition, the Operating Agreement still refers to the old Articles of Organization and specifically states that the purpose of the business is to "own and operate a comedy theater, restaurant & bar & a school of comedy and engage in any and all activities related or incidental to."  According to § 29-802.05 of the D.C. Code, all individuals who sign off on Articles of Organization or other documents related to the Certificate of Organization are required to do so under penalties of making false statements that the information in the record is accurate.

As an experienced businessman, Defendant Dawson's failure to amend the Articles of Organization and the Operating Agreement was no mere oversight.  Based on information Plaintiff has obtained since being forced out of the very business he conceived, Plaintiff believes that it was always Dawson's intention to use Plaintiff and his plans for Riot Act in order to

secure investment funds and cheap real estate for his own business. Defendants have not amended the Articles of Organization and Operating Agreement nor filed factually accurate paperwork with regard to the Certificate of Occupancy and Certificate of Good Standing because this could jeopardize their entire business operation. As such, but for Plaintiff's involvement in the business, Defendants would not have the legal status to conduct their business. Plaintiff's involvement allowed Defendants to "backdoor" their way into carrying out their current business operations.

Accordingly, Plaintiff was left with no choice but to obtain legal representation. He filed a Complaint in the United States District Court for the District of Columbia on March 23, 2012. The actions summarized herein led to the causes of actions pled in Plaintiff's Second Amended Complaint and the damages and relief sought therein. Defendants' misuse of funds continues to this very day as the LLC continues to pay, not just the LLC's legal defense costs, but also the legal fees of Defendants Dawson and Heiss despite the fact that they are individual Defendants and that it was their illegal and fraudulent acts that give rise to the actions against them. The LLC also pays and continues to pay Tin Shop, LLC, a company that Dawson is a member of, a $100,000 per year "management fee" despite the fact that the LLC employs multiple full-time managers. For example, in 2014 right before the LLC started making this $100,000 payment, the LLC paid out $361,807.40 to its managers, more than 4 times what the LLC agreed to compensate Plaintiff for his managerial position.

### B.     Identities of the Parties

Plaintiff is John N. Xereas. He is the owner of the RIOT ACT Trademark. He has been involved in the comedy industry for 20 years, including opening and running a RIOT ACT comedy club in 2007. Following the voluntary closing of his original RIOT ACT comedy club

due to size constraints, Plaintiff continued doing business under various RIOT ACT trademarks and trade names and, from 2005 to 2012, organized and produced over 100 shows and created a business plan to pursue a new, larger commercial space.

The Defendants are Marjorie A. Heiss, Geoffrey O.S. Dawson, and Penn Social, LLC f/k/a Riot Act DC, LLC.

### C.      Jurisdiction

This Court has jurisdiction over the federal claims alleged in the Second Amended Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a)-(b).  The Court has supplemental jurisdiction over the various state-law claims alleged in Plaintiff's Complaint pursuant to 28 U.S.C. § 1367(a). Further, Defendants are subject to this Court's personal jurisdiction as they reside in and/or operate and transact business in the District of Columbia, can be found in this District, and have committed the act complained of in the Plaintiff's Second Amended Complaint in this District.

## II.      PLAINTIFF'S STATEMENT OF CLAIMS

The following claims from Plaintiff's Second Amended Complaint have survived Defendants' Motion for Summary Judgment:

**Claim No. 1:** Defendants have continued to use the RIOT ACT Trademarks and Domain Names, in violation of both Section 43(a)(1)(A) of the Lanham Act. *See* Plaintiff's Second Amended Complaint ("Am. Coml."), ¶¶ 244-49.

**Claim No. 2:** Defendants have used the RIOT ACT Trademarks and Domain Names without permission in interstate commerce in connection with the provision of goods and/or services, in violation of both Section 43(a) of the Lanham Act. *Id.* ¶¶ 250-53.

**Claim No. 3:** Defendants' aforementioned acts constitute common-law trademark

infringement, misappropriation of Plaintiff's goodwill, and unfair competition, in violation of D.C. common law. *Id.* ¶¶ 254-56.

**Claim No. 5:**  Defendants' aforementioned acts constitute a breach of contract and of the covenant of good faith and fair dealing under DC common law asserted against Defendants Dawson and Heiss.  *Id.* ¶¶ 267-70.

**Claim No. 7:**  The aforesaid acts of Defendants as stated in the Second Amended Complaint constitute a breach of the duty of good faith and fair dealing, in violation of § 29-804.09 of the D.C. Code. *Id.* ¶¶ 275-276.

**Claim No. 8:** Defendants breached the Operating Agreement and their duties and obligations created by the verbal agreement between with the Plaintiff, all to the detriment of the Plaintiff.  *Id.* ¶¶ 275-276. .[1]

**Claim No. 18:** Defendants retention of benefits conferred upon them by the Plaintiff as stated in the Second Amended Complaint, constitute unjust enrichment under D.C. Common law. *Id.* ¶¶ 346-351

**Claim No. 19:** Defendants caused to be registered, registered, and/or used the RIOT ACT Domain Names—which are identical and/or confusingly similar to Plaintiff's RIOT Trademarks—with a bad faith intent to profit, constituting cyber-squatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). *Id.* ¶¶ 352-356.

## III.  PLAINTIFF'S STATEMENT OF DEFENSES TO DEFENDANTS' COUNTERCLAIMS

---

[1] While Counts 8 and 18 have survived summary judgment in their entirety, including Plaintiff's derivative claim, the Court's October 5, 2018 Order & Memorandum Opinion [ECF 187-88] ("Opinion") indicates the Court's intention to dismiss the derivative claims.  As such, Plaintiff has treated this part of the Counts as dismissed.  However, Plaintiff reserves his rights as to his surviving derivative claims, in the event that he has misinterpreted that Court's Opinion.

On February 10, 2016, more than four years after Plaintiff filed his original complaint, Dawson, Heiss, and Penn Social (collectively, the "Defendants") filed their Counterclaims. Their Counterclaims are designed to lambast Plaintiff for "bad behavior" (*e.g.*, keeping cash in the comedy theatre's safe and obtaining advice from his mother), while quietly hiding a lack of harm.  Many of the alleged "improprieties" in the Counterclaims are not improprieties at all, but merely customary practice in the comedy industry.  For example, Defendants complain that Plaintiff hired comics without contracts and made cash payments.  *See* Counterclaims at ¶ 25. In the comedy industry, opening acts can be paid as little as $25 to $75, and it is the usual and ordinary practice to hire such performers without a written contact. Indeed, many of these performers would be dissuaded from performing entirely if forced to execute legal agreements for such short, low-paying opening gigs.  In any event, these allegations amount to nothing more than red herrings; Defendants do not cite a single clause in the Operating Agreement or other corporate policy document that required a signed agreement in place or check payment for every performer.  Moreover, Defendants do not allege even one instance in which they experienced damages resulting from any of these actions.

The only claims that appear to have any degree of substance are in regard to the alleged "sabotage of the social media sites."  *Id.*, at ¶¶ 35-41. Yet Defendants do not allege that Plaintiff was responsible for the removal of the comedy theater's social media.  Nor do Defendants allege that Plaintiff made any sort of agreement with the party (whomever that might be) allegedly responsible for removing the social media or that Plaintiff took a single action in furtherance of this so-called scheme.  Instead, they merely allege that others "mysteriously" lost access to the sites, passwords were "inexplicably" changed, and content "disappeared." *Id*., at ¶35.  Any question as to the provenance of these "mysterious acts" was cleared up during discovery when

Dawn Henderson admitted to taking down the LLC's social media accounts or changing the account passwords such that LLC employees could not access them – with absolutely no direction or assistance from Plaintiff Xereas.

Plaintiff has raised several affirmative and other defenses to the Counterclaims brought by Dawson, Heiss, and Penn Social. First and foremost, the Defendants fail to state a claim on which relief can be granted.

Second, the counterclaims should be dismissed to the extent they are barred, in whole or in part, for failure to join indispensable parties.

Third, the Plaintiff asserts that the counterclaims are barred based on the following affirmative and other defenses: that the counterclaims (1) are barred by the doctrines of failure to mitigate and/or unclean hands; (2) are barred on the basis that Defendants would be unjustly enriched if they were allowed to recover any part of the damages alleged in the Counterclaim; (3) are barred to the extent that the counterclaims presented have been settled, compromised, released or otherwise discharged; (4) are barred because Plaintiff's alleged conduct or the alleged conspiracy is not the direct or proximate cause of the Defendants' injury; (5) are barred because of a failure to exercise reasonable care and diligence to mitigate damages; (6) are barred because the alleged damages in the counterclaims, if any, are indirect, too speculative, too remote, cannot be reasonably ascertained, and/or because of the impossibility of proof and allocation of these alleged damages.

Fourth, that the Defendants had a duty to take reasonable action to minimize any damage, injury, or loss allegedly sustained as a result of the conduct alleged in the counterclaim, and they are barred from recovering any damages that might have been reasonably avoided.

Finally, the Plaintiff John Xereas asserts that the Defendants' alleged damages, if any,

resulted from the acts or omissions of third parties who were independent of Plaintiff and over

whom Plaintiff did not have control. The acts of such third parties constitute intervening and

superseding causes of harm, if any, suffered by the Counterclaims Plaintiffs. As such, Plaintiff is

entitled to a reduction of the damages, if any, to which he may be liable to the extent such

damages were the results of the acts or omissions of persons or entities other than himself.

## IV.        SCHEDULE OF WITNESSES TO BE CALLED BY PLAINTIFF

| Witness Name | Address | Topics to Be Addressed | Estimated Length of Testimony |
|---|---|---|---|
| Al Goodwin | 1603 Attorney Court Herndon, VA 20170 | Direct witness – A comedian who performed at Riot Act, Mr. Goodwin will be presented to testify regarding the comedy theater, the parties' roles and actions as he observed them, and Plaintiff's trademark and breach of good faith and fair dealing claims. | Monday, November 5, 2018 (1 hour) |
| John Xereas | 1608 Ladd Street Silver Spring, MD 20902 | Direct witness – Plaintiff will testify as to his claims relating to trademark, breach of contract, breach of duty of good faith and fair dealing, cybersquatting, and unjust enrichment. | Monday, November 5, 2018. Continuing on Tuesday, November 6, 2018 (4 hours) |
| Marjorie Heiss (Adverse) | 1359 28th Street, N.W. Washington, D.C. 20007 | Adverse witness – Plaintiff's counsel will seek to elicit testimony from Defendant Heiss on Plaintiff's claims relating to trademark, breach of contract, breach of duty of good faith and fair dealing, cybersquatting, and unjust enrichment. | Tuesday, November 6, 2018 (2 hours) |
| Geoffrey Dawson (Adverse) | 4905 Potomac Ave NW Washington, DC 20007 | Adverse witness – Plaintiff's counsel will seek to elicit testimony from Defendant Dawson on Plaintiff's claims relating to breach of contract, | Tuesday, November 6, 2018 |

| | | breach of duty of good faith and fair dealing, and trademark. | (2 hours) |
|---|---|---|---|
| Mick Aldasani | 212 Locust St., #111 Vienna, VA 22180 | Direct witness – A former Riot Act employee, Mr. Aldasani will testify on regarding the parties' roles and actions at the comedy theater, as well as Plaintiff's claims relating to breach of duty of good faith and fair dealing and damage to Plaintiff's trademark resulting from the Defendants' misdeeds. | Tuesday, November 6, 2018

(1 hour) |
| Terrance Hawkins | 1815 17th Street, N.W. Washington, DC 20009 | Direct witness – A former Riot Act employee, Mr. Hawkins will testify on regarding the parties' roles and actions at the comedy theater, as well as Plaintiff's claims relating to breach of duty of good faith and fair dealing and damage to Plaintiff's trademark resulting from the Defendants' misdeeds. | Tuesday, November 6, 2018

(1 hour) |
| James Morrissey* | Vu Forensics & Advisory, LLC 6830 Elm Street, Suite 1, Mclean, VA 22101 | Expert witness – Mr. Morrissey will testify on Plaintiff's claims relating to unjust enrichment, trademark, breach of contract and breach of duty, and damages related thereto. | Wednesday, November 7, 2018

(2 hours) |
| Cindy Vaughan (Adverse) | Cindy Vaughan & Associates 10820 Crippen Vale Ct. Reston, VA 20194 | Adverse witness – An accountant for Riot Act, Ms. Vaughan will testify regarding Plaintiff's claims relating to unjust enrichment, breach of contract and breach of the duty of good faith and fair dealing. | Wednesday, November 7, 2018

(30 minutes) |
| Sharon Thompson (Adverse) | 664 Currant Court La Plata, MD 20646 | Adverse witness – An accountant for Riot Act, Ms. Thompson will testify regarding Plaintiff's claims relating to unjust enrichment, breach of contract and breach of the duty of good faith and fair dealing. | Wednesday, November 7, 2018

(30 minutes) |
| Paul Michael Farfel | 3255 Hutton Dr. Beverly Hills, CA 90210 | Direct witness – A former Riot Act employee, Mr. Farfel will testify as to the inner workings of the comedy theater, the parties' roles and actions as he observed them, | Wednesday, November 7, 2018

(2 hours) |

| | | and Plaintiff's claims relating to breach of duty of good faith and fair dealing and trademark. | |
|---|---|---|---|
| Sedrick Muhammed | 2515 13th Street, N.W. Washington, D.C. 20009 | Direct witness – A guest at the club, Mr. Muhammed will be presented to testify regarding the comedy theater, the parties' actions there as he observed them, and Plaintiff's trademark and breach of good faith and fair dealing claims. | Wednesday, November 7, 2018  (30 minutes) |
| Total | | | 16.5 hours |

*Expert witnesses

## V.      LIST OF EXHIBITS TO BE OFFERED IN EVIDENCE BY PLAINTIFF

Pursuant to the Amended Scheduling Order, filed with the court on December 22, 2017, the Plaintiff and Defendants exchanged their Trial Exhibits List on July 18, 2018.

## VI.     PLAINTIFF'S DESIGNATION OF DEPOSITION EXCERPTS

Pursuant to the Amended Scheduling Order, filed with the court on December 22, 2017, the Plaintiff and Defendants exchanged their Deposition Designations on July 18, 2018. The Plaintiff did not make any designation of deposition excerpts because all deponents who are expected to be called as witnesses are subject to the jurisdiction of the Court and will be subpoenaed to testify.  Plaintiff may use deposition testimony for impeachment of Defendants' witnesses or witnesses called adversely.

## VII.    PLAINTIFF'S ITEMIZATION OF DAMAGES

Defendants Dawson and Heiss conspired to deprive Plaintiff of the business and reputation that he labored for nearly 20 years to create.  They stole his intellectual property and capitalized on his goodwill just long enough to obtain a drastically reduced rental space in a bustling neighborhood.  Defendants continue to use his business name and trademarks in order to

17

mislead government agencies.  They have damaged Plaintiff's RIOT ACT Trademark, reputation and deprived him of his livelihood.  Defendants have done all this while mismanaging the business and misappropriating funds thereby stealing funds from both Plaintiff and the Class B Members of the LLC. Accordingly, Plaintiff seeks damages related to the following.

Please note that many of the damages incurred by Plaintiff can be recovered under a number of different Counts pled in Plaintiff's Second Amended Complaint.  As such Plaintiff attempts to list the damages only once.  Plaintiff reserves the right to amend the Pretrial Statement and/or to seek recovery for all damages allowable under each respective Count pled in Plaintiff's Second Amended Complaint):

Plaintiff's Damages

| | |
|---|---|
| $1,614,994 | Unjust Enrichment / Breach of Duty of Good Faith & Fair Dealing (Plaintiff's damages for his portion of unsubstantiated LLC disbursements among other actions by Defendants) |
| $   45,000 | Breach of Contract / Breach of Duty of Good Faith & Fair Dealing / Unjust Enrichment (Guaranteed Payments still owed to Plaintiff for services as GM of the LLC) |
| $  106,680 | Breach of Implied Duty of Good Faith & Fair Dealing / Unjust Enrichment - (Plaintiff's damages for his portion of payments made to Tin Shop, LLC) |
| $6,000,000 | Compensatory & Treble Trademark Damages as Permitted Under 15 U.S.C. § 1117 |
| $  700,000 | Cybersquatting as Permitted Under 15 U.S.C. § 1117(d) ($100,000 per domain) |
| $  100,000 | Fraudulent inducement |
| $  106,680 | Breach of Implied Duty of Good Faith & Fair Dealing / Unjust Enrichment - (Plaintiff's damages for his portion of payments made to Tin Shop, LLC) |
| TBD | Breach of Implied Duty of Good Faith & Fair Dealing / Unjust Enrichment – (Attorneys' fees paid by the LLC for Dawson & Heiss) |
| TBD | Attorneys' Fees & Costs Incurred by Plaintiff |
| TBD | **TOTAL DAMAGES INCLUSIVE OF ATTORNEY'S FEES** |

### A.    <u>Unjust Enrichment.</u>

Per Plaintiff's Expert Witness Report and Motion for Summary Judgement, Plaintiff claims that Defendants, and their other businesses and agents, were unjustly enriched in the

amount of $1,614,994 which represents his 26.67% portion of unsubstantiated LLC disbursements.  The total of unsubstantiated LLC disbursements is $6,055,470.  The total of unsubstantiated LLC disbursements is broken down as follows:  (1) ATM/Cash withdrawals in the amount of $1,246,492 for which no supporting documentation evidencing the use or accounting of funds were provided; (2) Unsubstantiated expense reimbursements to employees and staff of the LLC in the amount of $176,809; (3) Unsubstantiated expense reimbursements to Defendant Dawson in the amount of $171,453; (4) Unsubstantiated Disbursements to Third Parties in the amount of $3,260,326; (5) Unsubstantiated Payments to LLC credit cards in the amount of $893,201; and (6) Unsubstantiated Payments to non-LLC credit cards in the amount of $307,189.  In addition, and among other things, Defendants have profited from Plaintiff's efforts to launch the business, use of his trademark and domain names, his industry contacts and his business plan, in addition to the benefit they received from preferential zoning, all with damages to be proved at trial.

### B.     Compensation as General Manager.

Plaintiff is seeking compensatory damages caused by Defendants failure to pay his proper compensation as general manager.  He has received only $26,000 in salary payments, but it was agreed that his salary, commencing January 2011 was to be $72,000.  Mr. Xereas was improperly removed as a managing member as of January 2012, so he is still owed $45,000 (the difference between his $72,000 in guaranteed payments and the $26,000 he actually received).

### C.     Theft and Illegal Use of Trademarks (Compensatory & Treble Damages).

Plaintiff is seeking compensatory and treble damages in the amount of $6 Million caused by Defendants' improper and unauthorized use of the Riot Act trademarks, in accordance with 15 U.S.C. § 1117 and other applicable laws.  Plaintiff also seeks a permanent injunction requiring

Defendants to change any trade name, and designations and materials reflecting any corporate name, trade name, or business name, including telephone listings, certificates of occupancies, business licenses, corporate documents, DCRA filings and liquor licenses so as to eliminate any and all use of the RIOT ACT trademark and name, or any name or mark confusingly similar thereto

**D.**    **Cybersquatting.**

Plaintiff seeks statutory damages under 15 U.S.C. § 1117(d) in a total amount of $700,000 ($100,000 for each of the seven domain names that are the subject of this litigation) based on Defendants unlawfully transfer of the ownership of Plaintiff's domain names and improper denial of access to those domains which precluded Plaintiff from sending and receiving e-mails for both personal and business purposes.

**E.**    **Breach of Contract & Related Contractual Claims**

Plaintiff seeks damages based on Defendants' multiple breaches of contract and their duty of good faith and fair dealing in the course of their dealings with Plaintiff in the establishment of the Riot Act business and its operations, including the payment of unsubstantiated LLC expenses as provided for in (A) herein, the misappropriation of LLC funds used to pay management and attorneys' fees as provided for in (H) herein and Defendants' pretextual removal of Plaintiff.  The relevant contract for this purpose is the parties' Amended Operating Agreement.

**F.**    **Attorney's Fees.**

Plaintiff seeks costs and attorneys' fees pursuant to 15 U.S.C. § 1117 and other applicable laws, as well as other reasonable expenses, including reasonable attorney's fees and costs.  Plaintiff also seeks damages for attorneys' fees improperly paid by the LLC for Defendants Dawson and Heiss's individual legal defenses.

**G.**    **Other Relief Sought.**

Plaintiff is seeking an order or agreement that Defendants will (1) cease use of the "Riot Act" Trademark, in any manner or capacity whatsoever, including but not limited to removing the "Riot Act" name from all legal licenses, certificates and documents and (2) return the electronic contact list containing the approximately 12,000 e-mail addresses that Plaintiff provided to Defendants.

## VIII.   PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

Plaintiff's Proposed Voir Dire was filed previously with the Court.

## IX.   PLAINTIFF'S REQUEST FOR RELIEF

Plaintiff pray that this Court award them relief as outlined above in Section VI, including, but not limited to an order granting: the payment of compensatory and punitive damages, and restitution, directly to Plaintiff in the amounts outlined above, including but not limited to reasonable attorneys' fees and costs; a permanent injunction requiring Defendants to change any trade name, and designations and materials reflecting any corporate name, trade name, or business name, including telephone listings, certificates of occupancies, business licenses, corporate documents, DCRA filings and liquor licenses so as to eliminate any and all use of the RIOT ACT trademark and name, or any name or mark confusingly similar thereto; and such other and further relief as the Court may deem appropriate.

Dated:  November 1, 2018                          Respectfully submitted,

/s/ W. Todd Miller
W. Todd Miller (D.C. Bar No. 414930)
Amber L. McDonald (D.C. Bar No. 974873)
Erin Glavich (Admitted Pro Hac Vice)
tmiller@bakerandmiller.com
amcdonald@bakerandmiller.com
eglavich@bakerandmiller.com
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW Suite 300

Washington, DC 20037
Telephone: 202-663-7820
Fax: 202-663-7849

Tony C. Richa
Richa@richalawgroup.com
Richa Law Group, LLC
One Bethesda Center
4800 Hampden Lane, Suite 200
Bethesda, MD 20814
Telephone: 301-424-0222

*Attorneys for Plaintiff John N. Xereas*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby affirm and declare that on November 1, 2018, I caused a true and correct copy of the foregoing to be served on all Parties registered for this case via the Court's ECF system.

<u>/s/ W. Todd Miller</u>
W. Todd Miller
