**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JOHN N. XEREAS,** | |
| **Plaintiff,** | |
| **v.** | **No. 12-cv-456-ZMF** |
| **MARJORIE A. HEISS,** *et al.*, | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION**</u>

Pending before the Court is Defendants' Motion for Summary Judgment on Plaintiff's fiduciary duty claim.  Upon careful consideration of the record, and for the reasons stated herein, the Court will GRANT Defendants' motion.

**I.      BACKGROUND**

A.      <u>Procedural History</u>

Plaintiff John Xereas is suing his former business partners at the Riot Act DC, LLC, Defendants Geoffery Dawson and Marjorie Heiss, for alleged violations that occurred while the parties were jointly managing the Riot Act DC, LLC (or "the LLC").  *See* Second Am. Compl. ¶ 1–2, ECF No. 102.  On October 5, 2018, Magistrate Judge Robinson granted Defendants' motion for summary judgment as to 19 of Plaintiff's 26 causes of action.  *See* Mem. Op., ECF No. 188; Order, ECF No. 187.  A jury trial on Plaintiff's remaining claims yielded a verdict awarding Plaintiff $106,000 plus legal fees for his breach of contract claim and found in favor of the Defendants on their conversion counterclaim.  *See Xereas v. Heiss*, No. 12-cv-456, 2019 WL 3557368, at *1 (D.D.C. Aug. 5, 2019), *aff'd and rev'd in part*, 987 F.3d 1124 (D.C. Cir. 2021).

1

Judge Robinson entered judgment pursuant to the jury verdict, but reduced the amount of damages to $45,000 in harmony with the amount claimed by Xereas in his pre-trial statement. *See id.* at *4.

Xereas appealed. *See* Notice of Appeal, ECF No. 258. The D.C. Circuit affirmed Judge Robinson's decision except as to her dismissal of Xereas's breach of fiduciary duty claim, which was remanded for further proceedings. *See Xereas v. Heiss*, 987 F.3d 1124, 1130–34, 37 (D.C. Cir. 2021). Now before the Court is Defendants' Motion for Summary Judgment on Plaintiff's breach of fiduciary duty claim. *See* Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 271.

B.    Factual Background

The underlying business dispute stems from the parties' agreement to a launch a comedy club in 2010. *See, e.g.*, *Xereas*, 987 F.3d at 1128–30 (recounting factual background). As relevant here, Xereas alleges that the Defendants breached their fiduciary duties by engaging in self-dealing, failing to disclose conflicts of interest, and suppressing Xereas's rights as a minority member. *See* Pl.'s Resp. 2, ECF No. 272. Xereas relies on testimony that Defendant Dawson brought Defendant Heiss into the LLC "so that the two of [them] together would be able to control the decisions of the LLC." Def. Dawson's Decl., Ex. 2 to Pl.'s Resp. 1, ECF No. 272. Defendant Dawson counters that this arrangement "was explained to Mr. Xereas who . . . agreed to its terms." *Id.* Additionally, Xereas alleges that Defendant "Heiss prepared the documents . . . to create and operate the business" and did not include a "conflict-of-interest provision [or] an independent counsel provision." Pl.'s Resp. 6.

Xereas claims that Defendant Dawson "treat[ed] the comedy club as his personal piggybank" and that "Defendant Heiss was complicit in the scheme." *Id.* at 6–7. Xereas claims that Defendant Dawson paid himself "approximately $10,000 per month in 'management fees' and that "Defendant Dawson alone 'negotiated' both sides of this contract." *Id.* at 7. Xereas relies

solely on allegations contained in the Second Amended Complaint to support this allegation.  *See id.* at 11–13.

Xereas largely relies on testimony from his expert, James Morrissey.  *See* Morrissey Tr., Ex. 6 to Pl.'s Resp., ECF No. 272.   Morrissey highlighted discrepancies in the LLC's recordkeeping, but he did not testify about actions by Defendants that would have caused these discrepancies.   Rather, Morrissey's testimony was limited to the review of the LLC's bank statements.   Specifically, Morrissey identified six categories of discrepancies:

- Insufficient Expense Documentation (Employees and Staff): $176,809

- Insufficient Expense Documentation (Defendant Dawson): $171,453

- Improper Accounting Case: $1,246,492

- Insufficient Expense Documentation (Third Parties): $3,128,502

- Unsubstantiated Charges to LLC Credit Cards: $893,201

- Unsubstantiated Charges to Non-LLC Credit Cards: $307,189

*See id.* at 523–29.  Morrissey further explained it was "an industry practice that when there's a payment made, attached to that are all the receipts for the employee connected to that expense reimbursement; and in this case, the papers were missing."  *Id.* at 524.  As to the improper accounting of cash category, Morrissey explained that he "[m]ade a request for documentation to support all of the ATM withdrawals, [but] none was provided."  *Id.* at 526.  For the credit card categories, Morrissey believed he found "unsupported expense[s] and that [were] not ordinary and necessary for the business."  *Id.* at 528–29.  Mr. Morrissey concluded that the funds in question "could have stayed in the bank account, and if it were in the bank account, eventually it would have been distributed to the owners."  *Id.*

## II.   LEGAL STANDARD

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a).  A fact is material if it "might affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  In evaluating motions for summary judgment, the Court must review all evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor.  *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam).  In doing so, the Court must not assess credibility or weigh the evidence.  *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013).  However, the nonmoving party "may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence[.]" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009).  A genuine issue for trial must be supported by affidavits, declarations, or other competent evidence. *See* Fed. R. Civ. P. 56(c).  If the nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Liberty Lobby*, 477 U.S. at 249–50.

## III.   ANALYSIS

Defendants advance two arguments in support of summary judgement.  First, Defendants argue that the doctrine of judicial estoppel bars Xereas from relitigating his claim under a breach

of fiduciary duty.  Second, Defendants argue that Xereas lacks evidence of damages proximately caused by the Defendants' alleged breach of fiduciary duty.

A.    Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from 'adopting a legal position in conflict with one earlier taken in the same or related litigation' in order to "protect the integrity of the judicial process." *Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 96 (D.D.C. 2019) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "When determining whether judicial estoppel applies, courts generally consider three factors: (1) whether a party's later position is clearly inconsistent with their earlier position; (2) whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that the court was misled; and (3) whether the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 96.

Xereas's adduced testimony in support of his trademark, breach of contract and of the duty of good faith and fair dealing, unjust enrichment, and cybersquatting claims at trial.  *See* Pl.'s Resp. 16–17.  Mr. Morrissey then testified about related damages calculation.  *See* Morrissey Tr. 524:22–525:13.  Defendants argue that Xereas should be judicially estopped from recasting Mr. Morrissey's prior testimony in support of his breach of fiduciary duty claim.  *See* Defs.' Mot. at 11.  However, Xereas is not advancing a "clearly inconsistent" position.  *Winmar Constr., Inc. v. Kasemir*, 233 F. Supp. 3d 53, 59 (D.D.C. 2017).  As detailed above, Morrissey identified discrepancies in record keeping.  Xereas seeks the same damages from these discrepancies that he sought in the prior trial, except he now does so under the theory of a breach of fiduciary duty.  *See* Pl.'s Resp. 18.  The change in legal theory is permissible because Morrissey did not tie his damages testimony to any legal theory in particular.  *See* Morrissey Tr. 524–31.  Rather, Morrissey testified

to Xereas's economic damages "under the assumption that liability has been determined" which was "a result of [the alleged] actions of the Defendants."  *See* Expert Report of James Morrissey, Ex. 1 to Defs.' Mot. 1, ECF No. 271.  Thus, Xereas's position that the misappropriation of funds supported his unjust enrichment and conversion claims "is not entirely at odds with [his] argument" that the misappropriation of funds supports a breach of fiduciary duty.  *Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*, 531 F. Supp. 3d 153, 167 (D.D.C. 2021), *aff'd sub nom. Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*, 31 F. 4th 800 (D.C. Cir. 2022). And any "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits." *Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010).

Further, Xereas would not derive an unfair advantage if not estopped.  To prove liability Xereas must still establish a causal link between the breach of fiduciary duty and Mr. Morrissey's identified damages.  If the misappropriation of funds were only connected to Xereas's unjust enrichment and conversion claim, a fact finder would be unable to find causation as to the remining fiduciary duty claim.  *See Mach. Project, Inc. v. Pan Am. World Airways, Inc.*, 199 F. Supp. 3d 382, 389 (D. Mass. 2016) (denying judicial estoppel "despite the fact that [Plaintiff's] current and past positions are inconsistent" because they "do not stand to gain an 'unfair advantage'"). Defendants' "position is apparently that once a party has taken a position in litigation, it is bound to that position for all time in all future litigation . . . . Such an interpretation would contravene the equitable purposes that judicial estoppel was designed to promote[.]" *Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of NY*, 619 F. Supp. 2d 1178, 1185 (S.D. Ala. 2008).

B.   Double Recovery

The "particular obligations of a fiduciary depend on the precise relationship between the

parties and on the surrounding law." *United States for use of Mgmt. & Constr. Servs., LLC*, No.

20-cv-1232, 2021 WL 1516056, at *7 (cleaned up).

> [F]iduciary relationships can be created by common law, by statute,
> or by contract, and can have different characteristics. "Well-known
> examples of habitual or categorical fiduciary relationships include
> those between trustees and beneficiaries, agents and principals,
> directors and corporations, lawyers and clients, and guardians and
> wards, as well as the relationship among partners."

*Plank v. Cherneski*, 469 Md. 548, 598 (2020) (quoting Deborah A. DeMott, *Relationships of Trust*

*and Confidence in the Workplace*, 100 Cornell L. Rev. 1255, 1261 (2015)).

As "managing members" of the Riot Act DC, LLC, Defendants Dawson and Heiss owed

common law fiduciary duties to the LLC and to Xereas.  *See id.* at 572.  "[T]he parties' agreement

to enter into business and execution of the operating agreement gave rise to their fiduciary

relationship, and the operating agreement helped define the contours of those fiduciary duties."

*Xereas*, 987 F.3d at 1135.  Thus, conduct that violated the parties' business agreement also defied

their fiduciary duties.  In this type of case, the two claims may "blend together" because "the facts

. . . that support these claims" are "all the same."  *Plank*, 469 Md. at 604.  Yet "a party 'cannot

recover the same damages twice, even though the recovery is based on two different theories."

*Xereas*, 987 F.3d at 1134 (quoting *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 241

(D.C. Cir. 2018) (Wilkins, J., concurring)).

Xereas alleges that the Defendants engaged that benefitted themselves individually rather

than paying Xereas.  *See* Pl.'s Resp 12.  But those allegations "are coextensive with [his] breach

of contract claims."  *Logtale, Ltd. v. IKOR, Inc.*, No. 11-cv-05452, , at *5 (N.D. Cal. Aug. 16,

2016).  And he "cannot recover damages for both."  *Id.* at *5.

Xereas counters that he can recover damages for deeds outside of his improper removal as the managing member, for which he was already compensated. *See* Pl.'s Resp. 1–2. For example, recovery is permissible where the fiduciary duty in question was a "supplement to the express contract[]" and was meant to "prevent a contracting party from engaging in conduct which . . . frustrate[d] the other party's rights to the benefits of the contract." *Logtale*, 2016 WL 7743408, at *5 (quoting *Racine and Laramie, Ltd. V. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031–32 (1992)). But Xereas "has not pointed to any supplemental breaches that are not covered by [his] breach of contract claim." *Id.*; *see* Pl.'s Resp. 10. Xereas's allegations of self-dealing and violations of duty of loyalty would have violated the parties' business agreement and were central to his already-litigated breach of contract claim. *See Logtale*, 2016 WL 7743408, at *5 (evidence that defendants "started other companies" and "paid themselves and their sons first" was "coextensive" with their breach of contract claim); Pl.'s Resp. 12. Because his claim "is based on the same evidence as [his] claim for damages for breach of contract, [it] is duplicative of that claim." *Logtale*, 2016 WL 7743408, at *5.

Xereas also argues that because his breach of contract claim was limited to only $45,000 of damages, he is entitled to additional damages under his breach of fiduciary duty claim. *See* Pl.'s Resp. 8. But Xereas is not entitled to additional damages for the same underlying conduct simply because his "his recovery is based on two different theories." *Xereas*, 987 F.3d at 1134. At bottom, Xereas is not "entitled to a windfall of double damages." *Id.* at 1135. Thus, summary judgment is appropriate. *See Wang v. Hsu*, 1993 WL 503265, at *3 (9th Cir. 1993) (affirming the district court's disallowance of breach of contract damages when plaintiffs were already compensated for their breach of fiduciary duty because "the three causes of action were based entirely on the same conduct").

C.      Breach of Fiduciary Duty

To establish a breach of fiduciary duty in the District of Columbia, a plaintiff must show "(1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of the fiduciary duties." *Democracy Partners v. Project Veritas Action Fund*, 453 F. Supp. 3d 261, 278 (D.D.C. 2020) (quoting *Millennium Square Residential Ass'n v. 2200 M Street LLC*, 952 F. Supp. 2d 234, 248 (D.D.C. 2013)). Xereas's failure to demonstrate breach and proximate causation independently warrants summary judgment.

1.      *Breach of Fiduciary Duty*

To establish breach, Xereas relies on two pieces of evidence: (i) Defendant Dawson's testimony that he brought Defendant Heiss on so that "together they could control the business,"; and (ii) Defendant Heiss's failure to draft independent counsel or conflict-of-interest provisions in their operating agreement. *See* Pl.'s Resp. 5–6. Xereas cites no support for finding this type of conduct in breach of Defendants' fiduciary duty. Xereas also fails to produce evidence of a transaction or payment where a conflict of interest with the Defendants existed. These failures are dispositive, where the burden is on Xereas. *Plank*, 469 Md. at 607. (affirming trial court's finding that minority members produced "insufficient evidence" to demonstrate a breach of fiduciary duty).

In fact, Xereas has offered no evidence that Defendants engaged in improper conduct. *See, e.g.*, *In re Refco Inc. Sec. Litig.*, 826 F.Supp.2d 478, 518 (S.D.N.Y. 2011) (allowing breach of fiduciary duty claims to proceed based on evidence of transferring cash into personal accounts and misrepresenting company finances). Morrissey alleged that Defendants engaged in improper documentation of the company's expenses. *See* Morrissey Tr. 523. Indeed, his analysis was

limited, as his testimony "assumed that liability ha[d] been determined."  Expert Report of James Morrissey at 1.

Xereas alleges a variety of facts detailing "Defendants' plan" to "suppress his vote . . . and engage[] in self-dealing" in breach of their fiduciary duties.  *See* Pl.'s Resp. 11–13.  But "facts alleged in a complaint are not evidence for the purposes of a motion for summary judgment." *Newton v. Off. of the Architect of the Capitol*, 840 F. Supp. 2d 384, 397 (D.D.C. 2012) (quoting Fed. R. Civ. P. 56(c)(1), (3)); *see also Gordon v. Beers*, 972 F. Supp. 2d 28, 37 (D.D.C. 2013) (same).  Perhaps the evidence for these claims could be unearthed somewhere in the record; however, "a district court should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis."  *Newton*, 840 F. Supp. 2d at 397 (quoting *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996)) (cleaned up).  "Without providing any corroborating evidence that supports [his] assertions, the '[p]laintiff has offered nothing to create a material dispute of fact' regarding [his vote suppression and self-dealing claim]."  *Rahimi v. Weinstein*, No. 16-cv-1173, 2020 WL 1873588, at *4 (D.D.C. Apr. 15, 2020) (quoting *Gordon v. Beers*, 972 F. Supp. 2d 28, 37 (D.D.C. 2013)).

### 2.    *Proximate Cause*

"The proximate cause of an injury is one which, 'in its natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred.'"  *de Los Rios v. NationsBank, N.A.*, 911 F.Supp.8, 11 (D.D.C. 1995) (quoting *Wagshal v. District of Columbia*, 216 A.2d 172, 175 (D.C. 1966)).  The "plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's

injuries and that the injuries were foreseeable." *Phillips v. Spencer*, 390 F.Supp.3d 136, 181 (D.D.C. 2019).

Xereas relies primarily on Morrissey's testimony to demonstrate causation. *See* Pl.'s Resp. 16. "Providing evidence through expert opinions is, of course, an entirely permissible manner of proceeding . . . in a motion for summary judgment[,] . . .[but] the burden of proof remains with Plaintiff to demonstrate that Defendants' alleged breaches of fiduciary duty caused the [damages] for which [he] seeks recovery." *RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 211 (S.D.N.Y. 2009).

The report and trial testimony from Plaintiff's expert do not establish factual allegations that would make the required "prima facie showing that the defendant[s] distributed corporate assets unequally and disproportionately among the [] owner-members of the [LLC]." *Willens v. 2720 Wisconsin Ave. Co-op. Ass'n, Inc.*, 844 A.2d 1126, 1136–37 (D.C. 2004) (denying summary judgment when plaintiffs made an "unrefuted showing" that directors unequally benefited from a corporate asset distribution). Morrissey testified about six categories of funds with accounting discrepancies totaling $5.9 million. *See* Morrissey Tr. 523–29. Morrissey's testimony did not include any assessment of what these discrepancies meant, apportion liability, or allege self-dealing by the Defendants. *See id.* At most, Morrissey's established that the lack of documentation was a "big red flag" from a record keeping standpoint. *Id.* at 526. But improper documentation—on its own—does not equal self-dealing. Moreover, Xereas cites no statutory or common law duty equating improper recordkeeping to a breach of fiduciary duty. Indeed, Morrissey failed to establish that Defendants' breach of fiduciary duty "produce[d this red flag,] and without which the [injury] would not have occurred." *de Los Rios*, 911 F.Supp. at 11.

Xereas has alleged facts insufficient to meet his burden.   In *Atkinson*, a plaintiff, a warehouse operator, sued the defendant, a former manager of the warehouse, for breach of fiduciary duty based on the defendant's solicitation of the plaintiff's primary customer for the defendant's competing business.   *See BEP, Inc. v. Atkinson*, 174 F.Supp.2d 400, 402 (D. Md. 2001).   The plaintiff had to give the customer a 25% discount to prevent the customer from switching to the defendant's warehouse.   *See id.* at 404.   The plaintiff produced evidence: of "substantive negotiations" between the defendant and the customer; of the defendants' knowledge that this particular customer "constituted [] 90% of [the plaintiff's] business"; and of the defendant's meeting with the customer at plaintiff's warehouse.   *Id.* at 408.   These facts established a direct link between defendant's impermissible actions and the loss suffered by plaintiff—i.e., the 25% discount.   *See id.*   Morrissey's testimony about accounting discrepancies is insufficient to "establish a causal connection between [his] alleged damages . . . and [the] alleged misconduct." *Phillips*, 390 F.Supp.3d at 181.   "As part of [Xereas's] burden in raising an issue of material fact as to causation, [Xereas] must have competent expert evidence of cause in fact and foreseeability— and again no evidence has been provided for either." *Alvarado v. Love & Hutson, G.P.*, No. 4:19-CV-2148, 2021 WL 1428477, at *12 (S.D. Tex. Apr. 15, 2021).

Xereas next argues that Defendants "unjustifiably limit" his damages to "lost profits and business opportunities."   Pl.'s Resp. 16–17; Pl.'s Ex. 8 at 7.   Xereas is correct that his damages need not be limited to such categories.   But "[s]ince there is insufficient evidence to support [Xereas's] claim that defendants' [] conduct was a proximate cause of [another loss, his] claim for damages based on that loss may not proceed." *Democracy Partners*, 453 F.Supp.3d at 276.

Because Xereas cannot establish breach or proximate cause, summary judgement for Defendants is warranted.  *Id.* at 283 (granting summary judgment on fiduciary duty claim when plaintiffs failed to show any injuries were proximately caused by defendant's breach).

**IV.   CONCLUSION**

In comedy, timing is everything.  And the time has come this for this comedy club litigation to finally end.  For the reasons stated herein, the Court will grant Defendants' Motion for Summary Judgement in an accompanying order.

Date: September 20, 2022

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE